**Elizabeth Jeanne PITTMAN, a minor under 18 years of age by Frederick PITTMAN her father and legal custodian and Frederick Pittman individually, Plaintiffs,**

v.

**Erna (Etta) Pittman GRAYSON a/k/a Erna Eyjolfsdottir, Helgi Hilmarsson, Icelandair, Inc., and Gundmundur Karl Jonsson, Defendants.**

No. 93 Civ. 3974.

United States District Court, S.D. New York.

Nov. 4, 1994.

---

Robert K. Erlanger, New York City, for plaintiffs.

Desmond T. Barry, Jr., Condon & Forsyth, New York City, for defendants.

## OPINION AND ORDER

SCHWARTZ, District Judge:

This is an action brought by a father and his minor child against the child's mother, who, along with several individuals, are alleged to have assisted in smuggling the child from the United States to Iceland, in violation of Florida court orders. Plaintiffs seek damages stemming from the alleged smuggling of the child to Iceland, on claims of intentional interference with custodial rights, intentional infliction of emotional distress, and false imprisonment.

Defendant Icelandair, Inc. ("Icelandair") moves to dismiss this action pursuant to 12(b)(1) of the Federal Rules of Civil Procedure (Fed.R.Civ.P.) for lack of subject matter jurisdiction based on the Warsaw Convention[1] or pursuant to Fed.R.Civ.P. 12(b)(6) on the grounds that section 1305(a)(1) of the Federal Aviation Act[2] (FAA) preempts plaintiffs' state law claims of intentional interference with custodial rights, intentional infliction of emotional distress, and false imprisonment. Alternatively, Icelandair moves to dismiss this action on the basis of *forum non conveniens*. For the reasons set forth below, defendant's motions are denied.

1. Convention for the Unification of Certain Rules Relating to International Transportation by Air, October 12, 1929, 49 Stat. 3000, T.S. No. 876 (1934), reprinted in 49 U.S.C. § 1502 (note) (1976) ("Convention").

2. 49 U.S.C.A. § 1305(a)(1) (West Supp.1994). Public Law 103–272, which restated in comprehensive form without substantive change certain general and permanent laws related to transportation as subtitles II, III, and V–X of title 49,

## FACTS

Jurisdiction of this Court is grounded upon diversity of citizenship. *See* 28 U.S.C. § 1332.

Plaintiff Elizabeth Pittman ("Elizabeth"), born March 23, 1982, is the daughter of plaintiff Frederick Pittman ("Fred Pittman") and defendant Erna Grayson Pittman a/k/a Erna Eyjolfsdottir ("Eyjolfsdottir"). Defendant Eyjolfsdottir is a citizen of Iceland who currently resides in Iceland with Elizabeth and her other daughter, Anna Nicole Grayson ("Anna"). Complaint at ¶¶ 1, 3.

Plaintiff Fred Pittman is a Gunnery Sergeant in the United States Marines and is stationed in Philadelphia. *Id.* at ¶ 2.

Defendants Helgi Hilmarsson ("Hilmarsson") and Gundmundur Karl Jonsson ("Jonsson") are both residents and citizens of Iceland. Jonsson, Eyjolfsdottir's stepfather, is the manager of the duty free shop at Keflavik Airport in Iceland. Plaintiffs allege that Hilmarsson is Eyjolfsdottir's boyfriend and that Hilmarsson assisted Eyjolfsdottir in her flight from Florida to Iceland. *Id.* at ¶ 4, 7, 25.

Defendant Icelandair is incorporated in Iceland, maintains its principal place of business at Reykjavik Airport in Reykjavik, Iceland and is authorized to do business in the State of New York. Defendant Icelandair's Answer with Cross–Claims at ¶ 2.

During 1991, plaintiff Fred Pittman initiated a custody proceeding against Eyjolfsdottir for sole custody of their daughter, Elizabeth. At the time Fred Pittman initiated this proceeding, he and Eyjolfsdottir had joint custody of Elizabeth. Complaint at ¶¶ 8–9.

During the custody proceedings, Eyjolfsdottir stated under oath at her deposition that she did not intend to leave Florida with

United States Code, moved § 1305(a)(1) to § 41713(b)(1). The House Report No. 103–180, which accompanied the House bill (H.R. 1758) provides: "this bill makes no substantive change in the law." Accordingly, the Court finds that Public Law 103–272 does not lessen the precedential weight of earlier judicial decisions concerning § 1305(a)(1) as applicable to the present action.

the girls. *Id.* at ¶ 13. Plaintiffs claim that during the custody proceedings, Eyjolfsdottir was under the restraining orders of two Florida courts not to leave Northern Florida with her daughters and that as a precautionary measure, Eyjolfsdottir's and the girls' passports had been removed from Eyjolfsdottir's possession. *Id.* at ¶ 12. Plaintiffs further claim that Eyjolfsdottir was at the time of the custody proceedings, attempting to acquire new Icelandic passports for herself and the girls through the Icelandic Consul in Florida by claiming that her passport had been lost. *Id.* at ¶ 13.

Plaintiffs allege that Eyjolfsdottir was informed by her counsel in late April, 1992 that the Florida court in Okaloosa County was going to grant Fred Pittman sole custody of Elizabeth and that Eyjolfsdottir subsequently fled Florida with Elizabeth and Anna. Plaintiffs further claim that after fleeing Florida, Eyjolfsdottir and her two daughters arrived at JFK International Airport ("JFK International") on May 2, 1992 to catch Icelandair's evening nonstop flight to Keflavik Airport. *Id.* at ¶¶ 15–17.

With respect to defendant Icelandair, plaintiffs allege that on the evening of May 2, 1992, Icelandair's employees and/or agents, hid Elizabeth and Anna at JFK International and then smuggled them onto an Icelandair aircraft bound for Keflavik Airport, based on a prior arrangement with Eyjolfsdottir and Jonsson. Plaintiffs maintain that the girls were boarded on the aircraft from an entrance different from that of the other passengers and without passports. In addition, plaintiffs allege that by surreptitiously boarding Elizabeth onto its aircraft, defendant Icelandair was fully aware that Eyjolfsdottir was not entitled to leave the United States with Elizabeth. *Id.* at ¶¶ 30, 31, 33.

Based on Icelandair's alleged smuggling of the girls onto an Icelandair aircraft, plaintiffs claim defendant Icelandair intentionally interfered with the custodial relationship between plaintiffs Fred Pittman and Elizabeth, intentionally inflicted emotional distress on Fred Pittman and falsely imprisoned Elizabeth.

On May 4, 1992 the Circuit Court for Okaloosa County, Florida issued an order awarding plaintiff Fred Pittman sole custody of Elizabeth and subsequently issued an order for Eyjolfsdottir's arrest on February 15, 1993. Ex. 2 of Affidavit of Robert K. Erlanger sworn on October 29, 1993 ("Erlanger Aff.").

In early 1993, a three member team from Corporate Training Unlimited (CTU), an organization devoted primarily to recovering children involved in international custody cases, went to Reykjavik, Iceland in an attempt to retrieve Elizabeth and Anna from defendant Eyjolfsdottir. CTU's efforts, however, were foiled by the Icelandic police. Affidavit of Desmond T. Barry, Jr., Esq. sworn to September 29, 1993 ("Barry Aff.") at ¶ 7.

On February 3, 1993, the Supreme Court of Iceland granted Eyjolfsdottir sole custody of Elizabeth, and on May 2, 1993, the Icelandic Committee of Child Protection issued an order stating that there were no grounds to interfere in the relationship of Eyjolfsdottir and her daughters. Ex. 4 of Erlanger Aff. at 38–41. Barry Aff. at ¶ 8; Ex. G of Barry Aff. On April 29, 1993, plaintiffs filed their complaint in this Court.

## DISCUSSION

Defendant Icelandair moves pursuant to 12(b)(1) of the Fed.R.Civ.P. to dismiss this action for lack of subject matter jurisdiction based on the Warsaw Convention or pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss this action on the grounds that section 1305(a)(1) of the FAA preempts plaintiffs' state law claims of intentional interference with custodial rights, intentional infliction of emotional distress, and false imprisonment. Alternatively, Icelandair moves to dismiss this action based on *forum non conveniens.* For the reasons set forth below, we deny defendant's motions.

### A. *The Warsaw Convention*

■ Icelandair argues that because plaintiffs' claims arise from "international transportation", as defined by Article 1(2) of the Warsaw Convention ("Convention")[3], the

---

**3.** Article 1(2) of the Convention states, in perti-     nent part, that for the purpose of this Convention

conditions and limits of the Convention automatically apply, including the forum limitations of Article 28. Article 28 provides that actions must be brought, at the option of the plaintiff, (1) "in the territory of one of the High Contracting Parties, either before the court of the domicile of the carrier or of his principal place of business", (2) "where he has a place of business through which the contract has been made", or (3) "before the court at the place of destination."

Icelandair further argues that if the Court determines that a claim falling under Article 1(2) of the Convention has not been brought in accordance with the forum limitations of Article 28, the court should dismiss the complaint without further inquiry into the Convention's liability provisions.[4]

Plaintiffs concede that their claims arise out of "international transportation", as defined by Article 1(2) of the Convention. Plaintiffs, however, maintain that the forum limitations of Article 28 are applicable only to claims falling within the liability provisions of the Convention. Plaintiffs further contend that Article 17 is the Convention's only potentially applicable liability provision. Article 17 states:

> The carrier shall be liable for damages sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, if the accident which caused the damages so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking.

Plaintiffs argue that their claims fall under neither Article 17 nor any of the other substantive liability provisions of the Convention and consequently that the Convention is inapplicable to their claims. For the reasons set forth below, we find for plaintiffs on this issue.

The Warsaw Convention was designed to effectuate two central public policy goals: (1) to establish uniformity in the aviation industry with respect to claims arising out of international transportation, as well as uniformity as to documentation, and (2) to limit air carriers' potential liability in the event of accidents. *In re Disaster at Lockerbie, Scotland,* 928 F.2d 1267, 1270 (2d Cir. 1991) (citations omitted). State law claims which fall within the scope of the Convention are preempted by the Convention. *Id.* at 1273. However, "[t]he text of the Warsaw Convention does not state that it is exclusive as to all causes of action arising out of international air flight; rather, it merely states that it is exclusive as to causes of action governed by its liability provisions." *Walker v. Eastern Air Lines, Inc.,* 785 F.Supp. 1168, 1170 (S.D.N.Y.1992).[5]

As a threshold matter, the Court must determine whether the Convention applies to plaintiffs' claims. *Pflug v. Egyptair Corp.,* 961 F.2d 26, 28–29 (2d Cir.1992) (citations omitted). The Court of Appeals has stated:

> This Court has held that when an action is one that falls within the province of the Convention, and the Convention does not authorize suit in the jurisdiction in which the action is brought, our inquiry ceases. . . . *However, the Convention does not apply to all claims of injury suffered in conjunction with international air travel; thus, as an initial matter this Court must determine whether the Convention applies to all of plaintiffs' claims.*

*Id.* (emphasis added).

Contrary to defendant Icelandair's position, the overwhelming weight of legal

---

"international transportation" shall mean "any transportation in which, according to the Contract made by the parties, the place of departure and the place of destination, whether or not there be a break in the transportation or a transshipment, are situated either within the territories of two High Contracting Parties, or within the territory of a High Contracting Party, if there is an agreed stopping place within a territory subject to the sovereignty, suzerainty, mandate or authority of another power, even though that power is not a party to this [C]onvention."

4. Defendant Icelandair claims that according to the facts of the case at bar, none of the fora specified by Article 28 include the United States. Plaintiffs argue that in the event that the Court were to find that Article 28 could be invoked, the United States is one of the proper Article 28 fora. As discussed below, because the Court finds that the Convention does not apply to the plaintiffs' claims, the Court need not address which fora are appropriate under Article 28.

5. The Convention's liability provisions fall under Chapter III of the Convention, which includes Article 17.

authority, both within and without this Circuit, requires this Court to determine whether the Convention's liability provisions apply to all of plaintiffs' claims, *prior* to evaluating whether the plaintiff has met the conditions and limits of the Convention.[6] *Shen v. Japan Airlines,* No. 93–1505, 1994 WL 167989, at *2 (S.D.N.Y. Apr. 13, 1994) (finding that all of plaintiffs' claims were governed by the Convention but dismissing case because all of the fora under Article 28 were in Japan or China); *Malik v. Butta,* No. 92–8703, 1993 WL 410168, at *3 (S.D.N.Y. Oct. 14, 1993) (determining plaintiffs' claims to be cognizable only under the Convention before evaluating subject matter jurisdiction, including Article 28); *Pflug,* 961 F.2d at 30 (finding that the question of whether defendant is "carrier" under Article 17 was "obviously antecedent to an examination of whether the United States [was] one of the jurisdictions in which Article 28 ... allows the plaintiffs to proceed against the carrier."). Accordingly, we now turn to the issue of whether the Warsaw Convention's substantive liability provisions apply to the plaintiff's claims.

■ Article 17 establishes the liability of international air carriers for harm to passengers. *Air France v. Saks,* 470 U.S. 392, 396, 105 S.Ct. 1338, 1341, 84 L.Ed.2d 289 (1985). Under Article 17, an air carrier is liable for passenger injury only when three conditions are satisfied: (1) there has been an accident, in which (2) the passenger suffered death, wounding or other bodily injury and (3) the accident occurred on board the aircraft or in the course of embarking or disembarking. *Eastern Airlines, Inc. v. Floyd,* 499 U.S. 530, 535, 111 S.Ct. 1489, 1494, 113 L.Ed.2d 569 (1991).

Plaintiffs argue that the case at bar does not meet the criteria of Article 17, because the events alleged by plaintiffs do not constitute an "accident" nor do plaintiffs' claims include "bodily injury".[7] In *Air France v. Saks,* the Supreme Court held that an "accident" triggering liability under Article 17 "arises only if a passenger's injury is caused by an unexpected or unusual event or happening that is external to the passenger." *Saks,* 470 U.S. at 405, 105 S.Ct. at 1345. The Court further noted that this definition of accident "should be flexibly applied after an assessment of all the circumstances surrounding a passenger's injuries." *Id.* Recently, this Court determined whether an alleged incident was an "accident" by considering whether such occurrence was a "risk characteristic of air travel". See *Curley v. American Airlines, Inc.,* 846 F.Supp. 280, 283 (S.D.N.Y.1994).

The history of the Convention suggests that the drafters intended the word "accident" to include incidents occurring while airplanes are in motion or en route and particularly to provide for events such as air disasters. *Walker,* 785 F.Supp. at 1172. Article 17 has also been interpreted by some courts to include torts committed by terror-

---

**6.** This Court notes that Article 24 explicitly links the Convention's conditions and limits—including Article 28's forum restrictions—to cases covered by Articles 17, 18 and 19. There is no language in Article 24 to support the proposition that Article 28 applies across the board to any case regarding "international transportation", as defined by Article 1(2). Article 24 states, in pertinent part:

(1) In the cases covered by Articles 18 and 19 any action for damages, however founded, can only be brought subject to the conditions and limits set out in this convention.
(2) In the cases covered by Article 17 the provisions of the preceding paragraph shall also apply....

**7.** The Supreme Court has explicitly stated that an air carrier cannot be held liable under Article 17 when an accident has not caused a passenger to suffer death, physical injury or a physical man-

ifestation of injury. *Eastern Airlines, Inc. v. Floyd,* 499 U.S. at 552, 111 S.Ct. at 1502. None of plaintiffs' claims with respect to defendant Icelandair—conspiracy to intentionally interfere with a custodial relationship, intentional infliction of emotional distress, and false imprisonment—involve a physical injury or physical manifestation of injury.

This Court notes that Judge Conner recently held that plaintiffs were precluded from asserting their state law claims of emotional distress which they claimed to have resulted from a hijacking incident. *Adler v. Malev Hungarian Airlines,* No. 89–8252, 1992 WL 15144, at *2 (S.D.N.Y. Jan. 23, 1992). In light of our finding that plaintiffs' claims in this action do not involve an "accident" under Article 17, we need not reach the issue of whether a plaintiff, whose mental or emotional injuries are a result of an "accident" under Article 17, is precluded from bringing a state law tort claim.

ists or fellow passengers. *Saks,* 470 U.S. at 405, 105 S.Ct. at 1345 (citations omitted). The Second Circuit recently affirmed its position that hijacking qualifies as an accident under Article 17. *Pflug,* 961 F.2d at 29 (citations omitted).

Instances found by this Court to fall outside the meaning of "accident" range from deaths due to natural causes to injuries sustained by inebriated plaintiffs. *Curley,* 846 F.Supp. at 283 (passenger's injuries while being detained and searched by Mexican authorities, after the captain of his flight falsely identified him as having smoked marijuana on the flight, were not caused by an "accident" under Article 17); *Walker,* 785 F.Supp. at 1170 (passenger who died of natural causes during an international flight did not fit the meaning of "accident" under Article 17); *Price v. British Airways,* 1992 WL 170679, *1, 3 (S.D.N.Y.) (plaintiff who voluntarily consumed alcoholic beverages during a flight and subsequently suffered injuries when punched by a fellow passenger could not recover under Article 17, because his injuries were not caused by an "accident"); *Padilla v. Olympic Airways,* 765 F.Supp. 835, 836, 838 (S.D.N.Y.1991) (plaintiff's injuries as a result of falling in an aircraft lavatory after voluntarily consuming alcoholic beverages during a flight were not due to an "accident" under Article 17).

Here, plaintiffs claim that Icelandair conspired to intentionally interfere with a custodial relationship, intentionally inflicted emotional distress on plaintiff Fred Pittman and falsely imprisoned plaintiff Elizabeth Pittman. Plaintiffs claims arise from allegations that Icelandair hid Elizabeth and Anna in JFK International and then smuggled Elizabeth and Anna onto an Icelandic aircraft by boarding them onto the aircraft from an entrance different from that of the other passengers and boarding them without passports. Complaint at ¶¶ 30–31.

While the issue of whether Icelandair's conduct qualifies as an "accident" is a close question, inasmuch as the alleged action is literally "unexpected", "unusual" and "external to the passenger", a thorough examination of relevant legal precedent persuades us that defendant's conduct should not be regarded as an "accident" under the Warsaw Convention. First, in applying the *Saks* test, courts have focused on whether the alleged conduct constitutes a "risk inherent in air travel". · *See Curley,* 846 F.Supp. at 283. This criteria both explains why instances such as aircraft collisions, terrorist activities, or even intentional torts by other passengers qualify as accidents, and renders defendant's reference to decisions involving such conduct tenuous at best. The risk that airline personnel will smuggle a passenger onto an international flight in violation of a court order, or will otherwise commit· intentional torts against a passenger, hardly constitutes a "risk inherent in air travel". See *Curley,* 846 F.Supp. at 283.[8]

We cannot agree with Icelandair's suggestion that the drafters of the Convention intended the term "accident" to encompass the conduct alleged here. Nor do we believe that judicial interpretation of the term "accident" under precedent to date compels such a finding. Accordingly, because state law causes of action arising from an international flight remain viable where, as here, they do not fall under the Convention, *Lockerbie,* 928 F.2d at 1273, plaintiffs' state law claims with respect to defendant Icelandair—intentional interference with custodial relations, intentional infliction of emotional distress and false imprisonment—survive Icelandair's motion to dismiss based on the Convention.

## B. *The Airline Deregulation Act*

▮ Icelandair further maintains that this Court should dismiss plaintiffs' state law claims against Icelandair, because such

---

**8.** In this respect, we follow Judge Knapp's reasoning in *Curley v. American Airlines, Inc.* as applied to analogous facts. In *Curley,* plaintiff alleged that the captain of his flight falsely identified him to Mexican officials as having smoked marijuana on the flight, which led to injuries resulting from the plaintiff's detention and search by Mexican officials. See *Curley v. American Airlines, Inc.,* 846 F.Supp. 280 (S.D.N.Y. 1994). Noting that being falsely suspected and accused of smoking marijuana in a aircraft lavatory is hardly a "risk characteristic of air travel", Judge Knapp found that this incident was not an "accident". *Id.* at 283.

claims are preempted by section 1305 of the FAA.

In 1978, Congress enacted the Airline Deregulation Act (ADA) which amended the FAA. Pub.L. No. 95–504, 92 Stat. 1705 (1978). To ensure that states would not undo federal deregulation with regulation of their own, the ADA included a preemption provision which prohibited states from enforcing any law "relating to rates, routes, or services" of any air carrier. 49 U.S.C.A. § 1305(a)(1) (West Supp.1994).

In *Morales v. Trans World Airlines,* the Supreme Court reviewed the federal preemption section of the ADA. See *Morales v. Trans World Airlines,* —— U.S. ——, ——, 112 S.Ct. 2031, 2037, 119 L.Ed.2d 157 (1992). In *Morales,* airlines sued to enjoin state attorneys general from prohibiting allegedly deceptive airline fare advertisements through enforcement of state consumer protection statutes. The Court concluded that the ADA preemption provision expresses "a broad preemptive purpose." *Id.,* —— U.S. at ——, 112 S.Ct. at 2037. Adopting the same standard as that of the preemption provision of the Employee Retirement Income Security Act of 1974 (ERISA), the Court held that "[s]tate enforcement actions having a connection with or reference to airline 'rates, routes, or services'" are preempted under § 1305(a)(1). *Id.* The Court did, however, leave room for state laws relating to airlines by noting that "[s]ome state actions may affect [airline fares] in too tenuous, remote, or peripheral a manner to have preemptive effect." *Id.* —— U.S. at ——, 112 S.Ct. at 2040.

Icelandair claims that plaintiffs' claims of intentional interference with a custodial relationship, intentional infliction of emotional distress, and false imprisonment arise out of the reservation, ticketing, and boarding of Elizabeth. The 5th Circuit has defined services as including "ticketing [and] boarding procedures". *Hodges v. Delta Airlines, Inc.,* 4 F.3d 350 (5th Cir.1993). Based on *Morales* and some of its progeny, Icelandair maintains that plaintiffs' claims against Icelandair fall within the scope of "services" and are therefore preempted.

Relying upon *Morales'* caveat against an overly broad application of ADA's preemption provision, plaintiffs contend that state law tort claims are not preempted by the ADA because such claims affect rates, routes or services in "too tenuous, remote, or peripheral a manner to have preemptive effect." *Morales,* —— U.S. at ——, 112 S.Ct. at 2040.

Based on an analysis of the legislative history of the ADA, and subsequent judicial discussion of the Act, plaintiffs urge this Court to test whether their claims are preempted on the basis of an evaluation of whether the state claims in question would affect the competitiveness of the airlines. Plaintiffs argue that plaintiffs' state law claims, alleging airline employees/agents committed intentional torts, implicate ADA-protected airline services, in only a most tenuous and non-economic manner and were thus not the target of Congressional regulation via the ADA.

The Second Circuit has not as yet ruled on § 1305(a)(1). Recent cases in the District Courts in this Circuit suggest, however, that actions in which plaintiffs invoke traditional elements of tort law—suing for personal injuries sustained in airport terminals, during flights, or at the hands of airlines employees or fellow passengers—overwhelmingly incline against federal preemption. *Heller v. Delta Airlines,* No. 92–1937, 1993 WL 330093, at *2 (S.D.N.Y. Aug. 25, 1993) (finding that plaintiffs' claim of airline's negligence in causing a bag to fall from an overhead compartment causing injury to a plaintiff was not preempted by the ADA and further that the purpose of the ADA "does not require preemption of a state common law claim based on negligence like plaintiffs' claim in this action."); *Stagl v. Delta Air Lines,* 849 F.Supp. 179, 180–2 (E.D.N.Y.1994) (determining that claim by an elderly passenger injured by a fellow passenger in the baggage carousel area was not preempted by the ADA, since it would be illogical to assume that Congress intended § 1305 to exempt all air carriers from the duty to exercise reasonable care in maintaining their buildings or terminal space and plaintiff's claim "falls far short of encroaching upon economic deregulation of the

airline industry"); *Curley*, 846 F.Supp. at 284 (concluding that plaintiff's state law claims of negligence and false imprisonment—based on captain's passing on to ground personnel information concerning a passenger's smoking habits—were not preempted by the ADA, since they consisted of conduct that fell within the *Morales* exception to preemption).

In a case analogous to the present action, one court analyzed the issue of preemption on the basis of whether the regulation affects competitiveness. *See Sedigh v. Delta Airlines, Inc.*, 850 F.Supp. 197 (E.D.N.Y.1994). In *Sedigh v. Delta Airlines*, plaintiff brought suit on a number of state law claims including unlawful imprisonment and intentional infliction of emotional distress. Plaintiff claimed that the captain on his flight abused him verbally and physically, accused him of travelling with a false passport and handed him over to the German police who held him for three days. The court concluded that plaintiff's claims were not preempted under § 1305(a)(1) and that in determining preemption, "[t]he proper focus should be on whether the specific common law action addresses matters about which the airlines wish or are likely to compete." *Id.* at 200.

Icelandair relies on *Morales*, as well as on decisions of the 5th Circuit and District Courts in Texas and Tennessee, to support its proposition that § 1305 should be interpreted broadly to preempt state tort claims if such claims relate to "services".[9] In the only Circuit Court decision on ADA preemption of certain state tort claims, a passenger brought a personal injury claim against Delta Airlines, alleging that the airline was negligent in allowing a case of rum to be stored in an overhead bin. *Hodges v. Delta Airlines*, 4 F.3d 350 (5th Cir.1993), reh'g en banc granted, 12 F.3d 426 (5th Cir.1994). Despite its reluctance to preempt Hodges' state claims, *Hodges*, 4 F.3d at 355, the 5th Circuit found that it was obliged to reach such a result by a previous, unpublished decision by that Court, *Baugh v. Trans World Airlines, Inc.*, 915 F.2d 693 (5th Cir.1990). *Hodges*, 4 F.3d at 355.[10] The Court did note that "[g]enerally, however, state tort laws concerning safety can be enforced consistently with and distinctly from the services that Congress deregulated" under the ADA, while adding that "our vindication of airline safety claims under state law would not extend to all state tort claims". *Id.* at 355–356. Notably, the 5th Circuit has granted a rehearing en banc of *Hodges* with regard to the issue of ADA preemption of state law tort claims, but has not yet rendered its decision.[11]

9. *See, e.g. Williams v. Express Airlines*, 825 F.Supp. 831 (W.D.Tenn.1993) (handicapped plaintiff claimed he was falsely imprisoned by Express, when he was stopped from boarding a flight and was strapped into a chair in the gate area; plaintiff's claim of imprisonment was found to relate logically to airline service providing assistance to handicapped passengers and therefore was preempted by the ADA); *Howard v. Northwest Airlines, Inc.*, 793 F.Supp. 129 (S.D.Tex.1992) (passenger's daughter brought wrongful death action for failure to meet and assist passenger and provide quality medical care at the culmination of the flight; wrongful death claim was preempted by ADA because it related to services provided by Northwest in its assistance of passengers with connecting flight and in services rendered to ill passengers); *Lawal v. British Airways, PLC*, 812 F.Supp. 713 (S.D.Tex. 1992) (passenger brought action claiming false arrest, false imprisonment, assault and battery, intentional infliction of emotional distress by British Airways and its agents who, passenger alleged, failed to maintain adequate records of and control over the ticket stock, falsely represented to plaintiff that his tickets were stolen and wrongfully detained plaintiff and threatened him with arrest unless he purchased new tickets;

plaintiff's claims were found to be preempted by the ADA, because they related directly to the service of ticketing).

10. In *Baugh*, the Court affirmed the dismissal of a passenger's claim that during a flight, a stewardess stomped on her foot and injured her. The Court reasoned that the manner in which a flight attendant performs her work "arises out of the services" afforded passengers and is therefore preempted by Section 1305. *Hodges*, 4 F.3d at 355.

11. We acknowledge the difficulty of inferring a specific meaning from the decision of the Fifth Circuit to rehear *Hodges* en banc. In fact, we observe that in a parallel action against Icelandair brought by the father, James Grayson, regarding the airline's alleged conspiracy to kidnap his daughter (Elizabeth Pittman's sister), the District Court for the Northern District of Florida was unmoved by the rehearing en banc and held that plaintiff's state law claims were preempted by the ADA. *James v. Grayson v. Iceland Air*, Order of Dismissal, March 4, 1994. Nevertheless, based upon our reading of *Hodges* itself and the treatment of ADA preemption by our sister

In its moving papers, Icelandair emphasizes that in order for plaintiffs to prove their claims, plaintiffs must show that the airline violated its own reservation, ticketing, boarding, seating, ground service and in-flight service procedures. Despite Icelandair's observations concerning the relationship between plaintiffs' claims and "services", whether a state law claim relates to "services" is not the only consideration in evaluating preemption of state law claims under § 1305.

Plaintiffs' proposition that a state claim should be evaluated from the standpoint of its impact on the economic competitiveness of airlines has received express support in this Circuit, as well as receiving general support by the 5th Circuit which began its analysis of § 1305 in *Hodges* by stating, "In evaluating the scope of § 1305(a) preemption, one must bear in mind its origin in the ADA, *an economic deregulation statute.*" (emphasis added). In the Court's view, allowing plaintiffs' suit to go forward would not frustrate the ADA's economic deregulation of the airlines nor would it significantly impact the Airline's competitive posture.

■ The present action may be further distinguished from other cases involving potential preemption under the ADA by the fact that plaintiffs are alleging intentional torts which represent the civil offspring of criminal behavior. We agree with plaintiffs that the ADA is not intended to be a safe harbor for airlines from civil prosecution for the civil analogues of criminal offenses. *See Morales,* —— U.S. at ——, 112 S.Ct. at 2040 ("we do not ... set out on a road that leads to preemption of state laws against gambling and prostitution as applied to airlines.").

For the above stated reasons, we cannot agree with Icelandair's position that the ADA preempts plaintiffs' claims of intentional interference with a custodial relationship, intentional infliction of emotional distress, and false imprisonment. Accordingly, plaintiffs' state law claims against Icelandair survive Icelandair's motion to dismiss based on preemption by the ADA.

### C. *Forum Non Conveniens*

■ Icelandair's final argument is that this action should be dismissed on the basis of *forum non conveniens.*

■ Under a *forum non conveniens* analysis, the ultimate inquiry is to determine "where trial will be most convenient and will serve the ends of justice." *R. Maganlal & Company v. M.G. Chemical Company, Inc.,* 942 F.2d 164, 167 (2d Cir.1991) (citations omitted). A determination of *forum non conveniens* is left to the discretion of the trial court and may only be reversed when there has been a clear abuse of discretion. *Piper Aircraft Company v. Reyno,* 454 U.S. 235, 257, 102 S.Ct. 252, 266, 70 L.Ed.2d 419 (1981).

As a threshold issue, the court must determine whether there exists an alternative forum. *Piper,* 454 U.S. at 255, n. 22, 102 S.Ct. at 265, n. 22 (citations omitted). If an alternative forum does exist, a court must then weigh the relevant private and public interests, as described in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508–09, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947).[12] *R. Maganlal,* 942 F.2d at 167.

As noted, we must first determine whether an alternative forum exists for this action.

---

courts in this Circuit we respectfully disagree with the holding of *Grayson.*

**12.** In *Gilbert,* the Court outlined the following private interests of the litigants: "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises ...; and all other practical problems that makes trial of a case easy, expeditious and inexpensive", as well as "the enforceability of the judgment if one is obtained". *Gilbert,* 330 U.S. at 508, 67 S.Ct. at 843.

The Court also set forth the following public interest factors to be considered: "[a]dministrative difficulties" due to court congestion; the burden of imposing jury duty upon "people of a community which has no relation to the litigation"; in a case impacting a given community, the interest of maintaining the case in that community; a "local interest in having localized controversies decided at home"; and "having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself." *Id.* at 508–09, 67 S.Ct. at 843.

Although this requirement is ordinarily met when the defendant is "amenable to process", "rare circumstances ... where the remedy offered by the forum is clearly unsatisfactory" may render the alternative forum inadequate. *Piper,* 454 U.S. at 255 n. 22, 102 S.Ct. at 265 n. 22.

The "rare circumstances" in which alternative forums are found to be inadequate do not broadly encompass all instances involving substantive and procedural "disadvantages" of foreign forums. *See Blanco v. Banco Industrial de Venezuela,* 997 F.2d 974, 982 (2d Cir.1993). "[S]ome inconveniences or the unavailability of beneficial litigation procedures similar to those available in the federal district courts does not render an alternative forum inadequate." *Id.* at 982 (quoting *Borden v. Meiji Milk Products Co., Ltd.,* 919 F.2d 822, 829 (2d Cir.1990). Furthermore, the adequacy of the alternative forum is met "when the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in an American court." *Baris v. Sulpicio Lines, Inc.,* 932 F.2d 1540, 1549–50 (5th Cir.1991)

Alternative fora which offer a litigant no remedy or a meaningless remedy constitute the class of "rare circumstances" of inadequate fora. *Piper,* 454 U.S. at 255 n. 22, 102 S.Ct. at 265 n. 22 (finding that an alternative forum would not exist if such forum did not permit litigation of the subject matter of the dispute); *Borden,* 919 F.2d at 829 (noting that an alternative forum would unduly prejudice the plaintiff, were the plaintiff "forced to wait for years or even months to have a Japanese district court review its application" for a preliminary injunction).

In the present action, defendant Icelandair claims that the courts of Iceland provide an adequate alternative forum. Icelandair has indicated that Iceland's courts have personal jurisdiction over all defendants in this action and that all defendants are amenable to service of process in Iceland. Affidavit of Othar Orn Petersen sworn on September 28, 1993 (Petersen Aff.) at ¶ 6. In addition, Icelandair claims that Icelandic law provides "an adequate remedy for damage caused by the conspiracy and intentional torts alleged in the Complaint." *Id.* at ¶ 9. We disagree.

Icelandair has failed to demonstrate that the foreign forum, Iceland, is available and adequate in this action. Plaintiffs' claims against Icelandair include a cause of action based on the airline's alleged conspiracy with other defendants to interfere intentionally with the custodial relationship between plaintiffs Fred and Elizabeth Pittman. A Florida court order, awarding Fred Pittman sole custody of Elizabeth and ordering defendant Eyjolfsdottir's arrest, provides one of the legal bases for plaintiffs' claims concerning the custodial relationship of the plaintiffs. *See* Ex. 2 of Erlanger Aff. Moreover, plaintiffs claim that during custody proceedings, Eyjolfsdottir was under the restraining orders of two Florida courts not to leave Northern Florida with her daughters. Complaint at ¶ 12. Nevertheless, the Supreme Court of Iceland, disregarding Florida's court orders, has granted Eyjolfsdottir sole custody of Elizabeth. Ex. 4 of Erlanger Aff. at 38–41. In doing so, the Supreme Court of Iceland has effectively rendered plaintiffs' claim of custodial interference meaningless.

In our view, Icelandair's failure to address the most formidable barrier to plaintiffs' opportunity to be heard in an Icelandic forum—that the Supreme Court of Iceland has granted custody to Eyjolfsdottir—renders its motion for dismissal based on *forum non conveniens* fatally deficient.[13]

13. We note that even assuming the adequacy of an alternative forum, the balance of relevant public and private interests weighs in favor of maintaining the suit in this Court. *See supra* note 12.

Of the relevant private interests, the present forum is convenient to most witnesses and is capable of enforcing a potential judgment, as well as having easy access to sources of proof. Plaintiffs note that Icelandair has responded to plaintiffs' document requests and that all such documents have been in the original English. Of the thirty two witnesses with relevant knowledge listed in plaintiffs' response to Icelandair's interrogatories, Barry Aff., Ex. H, only 6 (plus unnamed customs officials in Keflavik Airport) are in Iceland. Moreover, two of these witnesses, defendant Eyjolfsdottir and plaintiff Elizabeth Pittman, are in Iceland illegally, which weighs against transferring this action to Iceland on the grounds of convenience and costs relating to witnesses. Plaintiffs' remaining witnesses are

CONCLUSION

For the reasons set forth above and in the interests of justice, defendant's motion to dismiss this action is denied.

SO ORDERED.

located in Philadelphia, New York, Florida, North Carolina, and Washington, D.C. *Id.* As plaintiffs emphasize, the testimony of Icelandair flight attendants can easily be worked into their flight schedules into New York, and depositions of Icelandair personnel have already been under such an arrangement. We observe also that a judgment against Icelandair, should one be obtained, may be enforced by this Court by ordering impoundment of an Icelandair airplane one of which arrives daily at JFK Airport.

Of the relevant public interests, this Court has a strong interest in alleged violations of an American citizen's rights which occurred within New York State. Furthermore, this Court undoubtedly has greater familiarity with interpreting New York State law than an Icelandic court.

Finally, we note that "[b]ecause there is a ordinarily a strong presumption in favor of a plaintiff's choice of forum, that choice will not be overcome unless the relevant private and public interest factors weigh heavily in favor of trial in the alternative forum." *R. Maganlal*, 942 F.2d at 167. We find no compelling reason to disturb plaintiff's choice of forum in the instant action.