Victor TRINIDAD, Plaintiff,

v.

AMERICAN AIRLINES, INC., Defendant.

Marc BOBKIN and Doreen
Black, Plaintiffs,

v.

AMERICAN AIRLINES, INC., John Doe, Richard Roe, and Sally Soe, Individuals Whose Identities Are Currently Unknown, Defendants.

Johnsie HUNTLEY and James
Huntley, Plaintiffs,

v.

AMERICAN AIRLINES, INC., Defendant.

Beth SEITZ and Sheri Floman,
Plaintiffs,

v.

AMERICAN AIRLINES, INC., Defendant.

Nos. 93 Civ. 4430 (SAS), 93 Civ. 5832 (SAS), 94 Civ. 9008 (SAS) and 95 Civ. 0058 (SAS).

United States District Court,
S.D. New York.

June 3, 1996.

Order Denying Reconsideration
June 17, 1996.

Paul C. Matthews, New York City, for Plaintiff Victor Trinidad.

Jeffrey J. Ellis, Donna H. Bakalor, Quirk and Bakalor, P.C., New York City, for Defendant American Airlines.

Frank M. Graziadei, Carole Mashamesh, New York City, for Plaintiffs Marc Bobkin and Doreen Black.

Frank P. Mangiatordi, Luris DiGiacinto, New York City, for Plaintiffs Johnsie Huntley and James Huntley.

Bruce S. Reznick, Brooklyn, New York, for Plaintiffs Beth Seitz and Sheri Floman.

### *OPINION*

SCHEINDLIN, District Judge.

I. *Introduction*

These actions arise out of an incident on an American Airlines flight. On August 28, 1991, Plaintiffs were passengers on Flight

# 1473 from JFK International Airport in New York to San Juan, Puerto Rico. Bobkin Complaint ("Cplt.") ¶¶ 3, 11; Seitz/Floman Cplt. ¶ 4. According to Plaintiffs, the plane hit turbulent weather and suffered a substantial drop in altitude in a short period of time. Specifically, Plaintiffs allege that "the airplane suddenly and without any warning fell 1000 feet," and then fell two more times. Seitz/Floman Cplt. ¶ 4. (Plaintiff Trinidad alleges that the aircraft "plunge[d] for several thousand feet." Trinidad Cplt. ¶ 7.) Plaintiffs' further allege that the negligence of American Airlines and its employees (collectively, "American" or "Defendant") caused the drop in altitude, and that the incident caused Plaintiffs to sustain serious personal injuries. Bobkin Cplt. ¶ 11; Seitz/Floman Cplt. ¶¶ 4–5, 9–10; Pl.Brief (Bobkin) at 1–2. Defendant summarizes Plaintiffs' claims as follows:

Plaintiffs essentially claim that [American's] pilots negligently flew directly into a developing thunderstorm which they knew to contain potentially severe turbulence. Plaintiffs further claim that the pilots failed to provide adequate warning to the passengers so as to cause them to fasten their seatbelts prior to the turbulence encounter.

Def.Brief (Nov. 15, 1995)[1] at 7. However, the Huntley plaintiffs allege that American did instruct the passengers to fasten their seatbelts, and that Huntley complied with this instruction, but that the seatbelt failed and caused Huntley to be thrown from her seat. Cplt. (Huntley) ¶¶ 16–19.

Defendant has moved *in limine* to establish the applicable law governing the standard of care that applies to American. Plaintiffs contend that because their personal injury actions are based on the negligence of the airline's employees, the actions are tort claims governed by state common law. Defendant argues that Plaintiffs' claims are expressly preempted by the Airline Deregulation Act of 1978 (ADA), or, alternatively, implicitly preempted by the Federal Aviation Act of 1958 (which the ADA amended). *See*

Def.Brief (Dec. 4) at A–1; Pl.Brief (Bobkin) at 2.

## II. *Preemption: General*

■ The Supremacy Clause of the Constitution provides that any state law that conflicts with a federal law is "without effect." *Maryland v. Louisiana*, 451 U.S. 725, 746, 101 S.Ct. 2114, 2128–29, 68 L.Ed.2d 576 (1981) (citing *M'Culloch v. Maryland*, 4 Wheat. 316, 427, 4 L.Ed. 579 (1819)); *see also* U.S. Const. Art. VI, cl. 2. Federal law displaces' state law where

(1) Congress expressly preempts state law; (2) Congressional intent to preempt is inferred from the existence of a pervasive regulatory scheme; or (3) state law conflicts with federal law or interferes with the achievement of federal objectives.

*Hodges v. Delta Airlines, Inc.*, 44 F.3d 334, 336 n. 1 (5th Cir.1995) (en banc) (citing *Hillsborough County, Florida v. Automated Medical Laboratories, Inc.*, 471 U.S. 707, 713, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714 (1985); *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 95, 103 S.Ct. 2890, 2898–99, 77 L.Ed.2d 490 (1983)). However, there is a presumption against preemption. In order to "avoid 'unintended encroachment on the authority of the States, ... a court interpreting a federal statute pertaining to a subject traditionally governed by state law will be reluctant to find preemption.'" *Rombom v. United Air Lines, Inc.*, 867 F.Supp. 214, 218 (S.D.N.Y. 1994) (quoting *CSX Transportation, Inc. v. Easterwood*, 507 U.S. 658, 664, 113 S.Ct. 1732, 1737–38, 123 L.Ed.2d 387 (1993)). The areas of health and safety have traditionally been within the police powers of the states. *See Hillsborough County*, 471 U.S. at 715, 105 S.Ct. at 2376 (1985) (citing *Jones v. Rath Packing Co.*, 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977)). The presumption that a state's police powers are not to be federally preempted may be overcome upon a showing that preemption was the "'clear and manifest purpose of Congress.'" *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407 (1992)

---

**1.** While I rejected that brief because it exceeded the Court's page limit, I am citing its Statement of Facts because I gave Defendant the opportuni-

ty (which it declined) to submit a separate appendix of facts along with its revised brief.

(quoting *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947)); *see also California v. ARC America Corp.,* 490 U.S. 93, 102, 109 S.Ct. 1661, 1665–66, 104 L.Ed.2d 86 (1989); *Hodges,* 44 F.3d at 338; *Von Hundertmark v. Boston Professional Hockey Ass'n, Inc.,* CV–93–1369, 1996 WL 118538, at *5 (E.D.N.Y. March 7, 1996).

### III. *Statutory Framework*

Until 1978, the Federal Aviation Act of 1958, 49 U.S.C.App. § 1301 *et seq.* (FAA), "gave the Civil Aeronautics Board (CAB) authority to regulate interstate airfares and to take administrative action against certain deceptive trade practices." *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 378, 112 S.Ct. 2031, 2034, 119 L.Ed.2d 157 (1992). However, the FAA did not "expressly preempt state regulation of *intrastate* air transportation." *Hodges,* 44 F.3d at 335 (emphasis added). Rather, it contained a saving clause providing that "[n]othing ... in this chapter shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies." 49 U.S.C.App. § 1506. Thus states could continue to regulate intrastate airfares and enforce their own laws against deceptive trade practices. *Morales,* 504 U.S. at 378, 112 S.Ct. at 2034.

In 1978, Congress amended the FAA by passing the Airline Deregulation Act (ADA), an economic deregulation statute. Congress "determine[d] that efficiency, innovation, low prices, variety, and quality would be promoted by reliance on competitive market forces rather than pervasive federal regulation," and thus "enacted the ADA to dismantle federal regulation." *Hodges,* 44 F.3d at 335. "To prevent the states from frustrating the goals of deregulation by establishing or maintaining economic regulations of their own," Congress included an express preemption provision in the ADA. *Id.* Section 1305(a)(1) expressly preempts the states from "enact[ing] or enforc[ing] any law, rule, regulation, standard, or other provision having the force and effect of· law relating to rates, routes, or services of any air carrier...."[2] 49 U.S.C.App. § 1305(a)(1). The ADA did not alter or repeal the FAA's § 1506 saving clause. *Morales,* 504 U.S. at 379, 112 S.Ct. at 2034.

Plaintiffs have brought personal injury claims based on the alleged negligence of Defendant's pilot and other airline personnel. In order to determine whether the ADA expressly preempts Plaintiffs' claims, the Court must decide whether the claims relate to airline "services."[3]

### IV. *Discussion*

#### A. *Express Preemption by ADA: Definition of "Services"*

As described above, the purpose of the ADA's preemption clause is to prevent states from interfering with "the development of an air transportation system driven to higher levels of innovation and efficiency by economic competition." *Von Hundertmark,* 1996 WL 118538, at *5. However, the Supreme Court has noted that " '[s]ome state actions may affect [airline services] in too tenuous, remote or peripheral a manner' to have preemptive effect." *Morales,* 504 U.S. at 390, 112 S.Ct. at 2040 (quoting *Shaw,* 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21). Beyond that, the Supreme Court has provided little guidance regarding whether a state law negligence claim against an air carrier is preempted by § 1301(a)(5). The "*Morales* [decision] commands that whatever state laws 'relate to rates, routes or services' are broadly preempted, but it does not define

**2.** The *Morales* Court interpreted the "relating to" language in the same way it interpreted that language in the ERISA statute: "we have held that a state law 'relates to' an employee benefit plan, and is preempted by ERISA, 'if it· has a connection with or reference to such a plan.' " *Morales,* 504 U.S. at 384, 112 S.Ct. at 2037 (citing *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983)). The Court went on to say that because the ADA contains identical language, it is "appropriate to adopt the same standard here: state enforcement actions having a connection with or reference to airline 'rates, routes, or services' are preempted under 49 U.S.C.App. § 1305(a)(1)." 504 U.S. at 384, 112 S.Ct. at 2037.

**3.** It is undisputed that the claims do not relate to rates or routes.

'services.' " [4]  *Hodges,* 44 F.3d at 336; *see also Stagl v. Delta Air Lines, Inc.,* 849 F.Supp. 179, 181 (E.D.N.Y.1994), *rev'd on other grounds,* 52 F.3d 463 (2d Cir.1995) (*Morales* Court was silent on "the extent of the activities properly includable in the 'services' provided by an air carrier, such as that term is used in Section 1305"). The only other suggestion from the Supreme Court is in *American Airlines, Inc. v. Wolens,* —— U.S. ——, ——, 115 S.Ct. 817, 823, 130 L.Ed.2d 715 (1995), in which the Court described claims concerning the airline's frequent flyer program as related to rates and "services, i.e., access to flights and class-of-service upgrades...." [5]

By contrast, lower courts have discussed at greater length the kinds of claims that are properly considered "related to services." While the "Second Circuit has not as yet ruled on [the scope of] § 1305(a)(1)," other circuits, and many district courts, have addressed the issue. *Pittman v. Grayson,* 869 F.Supp. 1065, 1072 (S.D.N.Y.1994); *see also Von Hundertmark,* 1996 WL 118538, at *6. For example, the Fifth Circuit recently ruled on a case in which a passenger opened an overhead compartment and dislodged a package that fell and cut the plaintiff's arm and wrist. The court held that § 1305(a)(1) did not preempt a "state law claim for physical injury based on alleged negligent operation of the aircraft." *Hodges,* 44 F.3d at 335. Similarly, the Tenth Circuit has held that an action against an airplane manufacturer by a pilot who was injured when his airplane collided with a vehicle parked across a runway is not preempted by the ADA. *Cleveland v. Piper Aircraft Corp.,* 985 F.2d 1438, 1443 (10th Cir.), *cert. denied,* 510 U.S. 908, 114 S.Ct. 291, 126 L.Ed.2d 240 (1993). "Since Congress has not enacted an express preemption clause governing airplane safety, *Morales* supports our conclusion that the savings clause demonstrates the [FAA] does not preempt state common law." *Id.*

District courts in this circuit have spoken several times on the issue, almost always ruling against preemption. In *Von Hundertmark,* the court held that an action for negligence against an airline for failure to train its employees properly and monitor actions aboard the flight, in connection with an incident in which passengers tore a flight attendant's blouse and fondled her, was not preempted by § 1305. 1996 WL 118538, at *6. In *Pittman,* the court found against preemption where a father sued an international airline, bringing claims such as intentional infliction of emotional distress and false imprisonment based on the airline's alleged role in smuggling his daughter out of the country. 869 F.Supp. at 1072–73. The *Pittman* court reviewed cases of the district courts in this circuit and stated that "actions in which plaintiffs invoke traditional elements of tort law—suing for personal injuries sustained in airport terminals, during flights, or at the hands of airline[ ] employees or fellow passengers—overwhelmingly incline against federal preemption." *Id. See also Rombom,* 867 F.Supp. at 222–24 (claims related to services, based on alleged unprofessional service by flight attendant and based on pilot's decision to return to the gate to discharge passengers, were preempted, while claim unrelated to services, based on alleged malicious conduct of flight crew in having passenger arrested, was not preempted); *Stagl,* 849 F.Supp. at 182 (declining to find federal preemption of an action for personal injuries sustained by an elderly passenger while she tried to retrieve her luggage from a baggage carousel operated by Delta at LaGuardia Airport); *Heller v. Delta Air Lines, Inc.,* 92 Civ. 1937, 1993 WL 330093, at *1–2 (S.D.N.Y. Aug. 25, 1993) (Section 1305(a) does not "require preemption of a common law negli-

---

4. In *Morales,* the Court focused on rates, holding that state deceptive advertising laws (which several states sought to apply against the airlines) were preempted by § 1305(a)(1) because the regulations at issue related to rates. *Morales,* 504 U.S. at 383–85, 112 S.Ct. at 2037.

5. Though Defendant now suggests that it was an error (*see* Def.Brief (Dec. 4) at A–1, A–2), counsel for American stated during oral argument to the

Supreme Court in *Wolens* that " 'safety claims,' for example, a negligence claim arising out of a plane crash, 'would generally not be preempted' " by the ADA. *See Wolens,* —— U.S. at —— n. 7, 115 S.Ct. at 825 n. 7 (citation omitted). In addition, the United States as *amicus curiae* in that case declared it " 'unlikely that Section 1305(a)(1) preempts safety-related personal-injury claims relating to airline operations.' " *Id.*

gence claim against an airline arising out of an incident in which luggage fell from an overhead compartment onto a passenger's head").[6]

District courts around the country have expressed similar views. In *O'Hern v. Delta Airlines, Inc.*, 838 F.Supp. 1264 (N.D.Ill. 1993), the plaintiff claimed that he suffered severe hearing loss as a result of Delta's negligence when the plane ascended too rapidly. As in the case at bar, the plaintiff alleged that the airline failed to train its employees properly and failed to warn of dangerous conditions during the flight. However, the court held that "since Congress omitted 'safety' from the language of § 1305, we find that a state law action for personal injuries sustained as a result of an airline's alleged negligence" is not related to airline "rates, routes or services." 838 F.Supp. at 1267. *See also Butcher v. City of Houston*, 813 F.Supp. 515, 517–18 (S.D.Tex.1993) (no preemption of a negligence claim for injuries sustained when plaintiff tripped at a gate after departing a plane operated by defendant airline; "the 'services' of an airline ... necessarily exclude an air carrier's common law duty to exercise ordinary care"); *Margolis v. United Airlines, Inc.*, 811 F.Supp. 318, 322 (E.D.Mich.1993) (no preemption of a negligence claim for injuries sustained when a luggage carrier fell from an overhead bin and struck plaintiff on the head; a "state common law claim based on negligence and the standard of reasonable care does not purport to regulate the services that air carriers provide to their customers in exchange for their fares"); *Stewart v. American Airlines, Inc.*, 776 F.Supp. 1194 (S.D.Tex.1991) (federal law did not preempt common law personal injury claim because claim based on jostling caused by negligent deflation of nose wheel did not relate to services).

Plaintiffs' claims do not involve "ticketing, boarding, in-flight service and the like," (*Stagl*, 849 F.Supp. at 181 (quoting *Stewart*, 776 F.Supp. at 1197)), nor do the claims involve "implementation of airline 'policies,' such as those relating to 'bumping, denial of boarding, segregation of smoking passengers,' or discrimination" (*Stagl*, 849 F.Supp. at 181 (quoting *Margolis*, 811 F.Supp. at 322)). Rather, the claims are analogous to those of the many cases cited above. Accordingly, I find that Plaintiffs' claims are not expressly preempted by the ADA.

## B. Implicit Preemption by the ADA

Despite the absence of express preemption, the Court must still decide whether preemption is implied; that is, whether the statute's "structure or purpose 'indicate[s] an intent to occupy an entire field of regulation.'" *Levy v. American Airlines*, 90 Civ. 7005, 1993 WL 205857, at *7 (S.D.N.Y. June 9, 1993), aff'd, 22 F.3d 1092 (2d Cir.1994) (quoting *Michigan Canners and Freezers Ass'n, Inc. v. Agric. Mktg. and Bargaining Bd.*, 467 U.S. 461, 469, 104 S.Ct. 2518, 2523, 81 L.Ed.2d 399 (1984)); *see also Hodges*, 44 F.3d at 337. However, an "examination of the legislative history of § 1305(a)(1) reveals no such congressional intent." *Levy*, 1993 WL 205857, at *7. Further, when Congress has included an express preemption clause in the same statute that is argued to implicitly preempt state law, courts need not infer congressional intent to preempt. *Rombom*, 867 F.Supp. at 225 (citing *Cipollone*). Courts should be reluctant to infer preemption in such cases because "Congress' enactment of a provision defining the preemptive reach of a statute implies that matters beyond that reach are not preempted." *Cipollone*, 505 U.S. at 517, 112 S.Ct. at 2618. *See also Cleveland*, 985 F.2d at 1443 (citing *Cipollone*); *O'Hern*, 838 F.Supp. at 1266 (same).

Several other factors weigh against a finding of implied preemption. The legislation that amended the FAA "to include [S]ection 1305 conspicuously declined to repeal the 'saving clause'" contained in the previous legislation. *Von Hundertmark*, 1996 WL 118538, at *6; *see also Hodges*, 44 F.3d at 338 n. 7. In addition, air carriers must maintain insurance that covers "amounts for which ... air carriers may become liable for

---

6. The *Heller* court noted that in *Plagianos v. American Airlines, Inc.*, 912 F.2d 57, 59 (2d Cir. 1990), the Second Circuit determined the "appropriate standard of care for negligence claims against [an] airline resulting from [an] incident where luggage" fell on a passenger without even discussing the possibility of preemption. *Heller*, 1993 WL 330093, at *1.

bodily injuries to or the death of any person, or for loss of or damages to property of others, resulting from the operation or maintenance of aircraft. . . ." 49 U.S.C.App. § 1371(q) (1994). As the Fifth Circuit has stated,

> The importance of § 1371(q) cannot be understated, for it can only be understood to qualify the scope of "services" removed from state regulation by § 1305(a)(1). A complete preemption of state law in this area would have rendered any requirement of insurance coverage nugatory.

*Hodges,* 44 F.3d at 338. Finally, the ADA does not implicitly preempt Plaintiffs' claims because the wrongs Plaintiffs allege "do not impose state law upon the competitive marketplace [that] section 1305 intended to encourage." *Von Hundertmark,* 1996 WL 118538, at *6. That is, the claims do not "impinge upon [the airline's] competitive position in the marketplace" nor do they "force [the] airline to alter its competitive strategy." *Id.* (citing *Sedigh v. Delta Airlines, Inc.,* 850 F.Supp. 197 (E.D.N.Y.1994)).

Defendant does not press the argument that the impossibility of complying with both state and federal law mandates a finding of conflict preemption. In any event, I find that conflict preemption does not apply. *See Sunbird Air Services, Inc. v. Beech Aircraft Corp.,* 789 F.Supp. 360, 362 (D.Kan.1992); *Holliday v. Bell Helicopters Textron, Inc.,* 747 F.Supp. 1396, 1400–1401 (D.Haw.1990).

### C. Implicit Preemption by the 1958 FAA

■ According to American, its "primary" argument is that "the 1958 Act which promulgated the federal aviation regulations governing flight operations has been held by many courts, including the Supreme Court, to implicitly preempt State attempts to regulate same." Def.Brief (Dec. 4) at A–1. Defendant suggests that "some courts" have mistakenly viewed the express preemption provision of the ADA (§ 1305(a)(1)) as determinative of the issue of regulation of flight operations. In fact, Defendant argues, Section 1305(a)(1) preempts "only State attempts at economic regulation." *Id.*

Defendant's argument unpersuasive. First, in the many cases cited above, in which

"the courts have almost uniformly resolved against federal preemption" (*Stagl,* 849 F.Supp. at 182), none of the courts found implied preemption under the 1958 FAA. Second, the cases American cites concern the preemption of municipal ordinances or regulations that specifically address the operation or regulation of airlines. *See, e.g., Burbank v. Lockheed Air Terminal, Inc.,* 411 U.S. 624, 638, 93 S.Ct. 1854, 1862, 36 L.Ed.2d 547 (1973) (municipal ordinance placed curfew on jets in order to abate noise); *Price v. Charter Township of Fenton,* 909 F.Supp. 498, 502 (E.D.Mich.1995) (township ordinance restricted frequency of flights); *City of Cleveland v. City of Brook Park,* 893 F.Supp. 742, 750–51 (N.D.Ohio 1995) (city ordinance established procedures for obtaining conditional use permit for new airport construction); *Gustafson v. City of Lake Angelus,* 856 F.Supp. 320, 325–26 (E.D.Mich.1993), *aff'd in part, rev'd in part,* 76 F.3d 778 (6th Cir.1996) (city ordinance restricted operation of seaplanes); *Blue Sky Entertainment, Inc. v. Town of Gardiner,* 711 F.Supp. 678, 693 (N.D.N.Y.1989) (town law regulated small airports and parachute jumping centers, requiring them to apply for licenses yearly and pay annual fee).

These cases are completely different from the case at bar. Plaintiffs' claims implicate no local ordinances or regulations. Rather, Plaintiffs have brought tort claims for personal injuries which they contend are the result of Defendant's negligence. In essence, Defendant argues that Plaintiffs' claims implicate "flight operations" in general, and cites cases which (Defendant believes) hold that "flight operations" in general are preempted. Defendant's argument is not convincing. The cases discussed in Parts IV.A. and IV.B., *supra,* amply demonstrate that personal injury lawsuits invoking "traditional elements of tort law" are not preempted by federal law. *See Pittman,* 869 F.Supp. at 1072.

### V. State Law

■ American argues that even if there is no federal preemption of Plaintiffs' claims, the application of New York state law would nonetheless require preemption. *See* Def.

Brief (Dec. 4) at 11; Letter of Jeffrey J. Ellis, Attorney for Defendant, dated May 29, 1996, at 2. In support, Defendant cites *Manfredonia v. American Airlines, Inc.,* 68 A.D.2d 131, 416 N.Y.S.2d 286 (2d Dep't 1979). However, it is not at all clear to the Court, especially in light of more recent cases, that *Manfredonia* mandates the result Defendant seeks. In *Manfredonia,* plaintiffs sued an airline for injuries sustained at the hands of an intoxicated airline passenger. Facing the question of whether New York's dram shop act could be applied to an air carrier in interstate flight, the court held that it could not. *Id.* at 138, 416 N.Y.S.2d 286. The court first noted that "the Twenty-first Amendment does not grant the State power to regulate the sale of alcohol out of State or in an area under exclusive Federal Control," and went on to say that "[f]ederal law exclusively governs the operation, control and safety of air carriers." *Id.*

American places too much stock in *Manfredonia.* The court in that case engaged in no discussion of either the FAA's saving clause or the scope of the ADA's preemption provision. Rather, the court simply stressed the need for "nationwide uniformity and Federal primacy" and concluded that "[v]arying State dram shop acts would perforce disturb the uniformity of Federal regulations." *Id.* The court did not address the applicability of common law standards of negligence (as opposed to statutory standards) to personal injury claims. By contrast, in a recent case in which an airline was sued for the wrongful death of an employee in a crash, the Third Department stated that "the great majority of the Federal courts having occasion to address the issue have excluded tort claims from the scope of" the ADA's preemption provision. *Harrell v. Champlain Enterprises Inc.,* 200 A.D.2d 290, 292, 613 N.Y.S.2d 1002 (3d Dep't 1994) (collecting cases). The *Harrell* court agreed with those federal courts that "the traditional role of State law is to be maintained in adjudicating bodily injury claims." *Id.* (citation omitted); *see also Hirsch v. American Airlines,* 160 Misc.2d 272, 278, 608 N.Y.S.2d 606 (Civ.Ct. N.Y.Co.1993) (noting without deciding that "most courts have found no preemption" for "products liability, wrongful death and personal injury actions arising out of plane crashes").

## VI. *Conclusion*

For the foregoing reasons, state common law governs Plaintiffs' claims.

SO ORDERED.

### *MEMORANDUM OPINION AND ORDER*

■ Defendant has moved for reconsideration of this Court's Opinion of June 3, 1996, in which I held that Plaintiffs' claims are not preempted by federal law but are governed by state common law. A court should grant a motion for reconsideration "only if the moving party presents [factual] matters or controlling decisions the court overlooked that might materially have influenced its earlier decision." *Morser v. AT & T Information Systems,* 715 F.Supp. 516, 517 (S.D.N.Y.1989); *see also Violette v. Armonk Assocs., L.P.,* 823 F.Supp. 224, 226 (S.D.N.Y. 1993). Because Defendant has presented no such factual matters or controlling decisions, the motion is denied.

■ In the alternative, Defendant seeks certification so that it may appeal the June 3, 1996 order to the Court of Appeals under 28 U.S.C. § 1292(b). Certification is justified only in exceptional circumstances (*see Klinghoffer v. S.N.C. Achille Lauro,* 921 F.2d 21, 25 (2d Cir.1990)), and only where an order involves "a controlling question of law as to which there is substantial ground for difference of opinion" and where "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b) (1993). Because there is no substantial ground for difference of opinion regarding the June 3 holding, and because I do not find that the circumstances of this case are exceptional, Defendant's motion for certification is denied.

SO ORDERED.