OPINION OF THE COURT
Louis B. York, J.
 This motion by defendant American Airlines (American) to amend its answer to include two affirmative defenses forces this court to examine, sua sponte, the preemptive scope of the Federal Aviation Act of 1958 as amended by the Airline Deregulation Act of 1978 (49 USC, Appendix § 1301 et seq.) (the Act). (See, Matter of Grand Jury Subpoenas, 72 NY2d 307, 311 [1988] [subject matter jurisdiction matters "must be considered by the court sua sponte” if not raised by the parties].) After careful consideration I conclude that the Act preempts plaintiff Susan Hirsch’s claims, and dismiss the case.
On September 7, 1992, Susan, Michele and Fred Hirsch had reservations on American flight 4, from LAX in Los Angeles to JFK in New York. Accordingly, they boarded the plane at the appropriate time. During the boarding process, however, an altercation took place between Fred Hirsch and representatives of American.[1] Because of Hirsch’s disruptive and unruly conduct, the American representatives forced Fred Hirsch to disembark; Susan and Michele Hirsch followed. Shortly thereafter, Susan Hirsch instituted this lawsuit, asserting various State law claims on her own behalf and on behalf of Fred and Michele Hirsch. The damages she alleged all arose, either directly or indirectly, from the incident.
Defendant responded with a general denial, then sought to amend its answer to include two affirmative defenses: (1) that plaintiff’s culpable conduct contributed to or caused the alleged injuries, and (2) that the Act preempts plaintiff’s claims. Plaintiff initially agreed to accept the amendments but withdrew her consent — which she claims was conditional — purportedly due to defendant’s lengthy delay in preparing the new answer. Defendant therefore brought this motion to amend.
Although defendant has moved to amend its answer to include the preemption argument in its answer, it has not asked this court to dismiss on this basis. However, the issue of *274 preemption is one of subject matter jurisdiction. (Little v Dow Chem. Co., 148 Misc 2d 11, 12 [Sup Ct, Erie County 1990].) Subject matter jurisdiction, of course, is a matter so fundamental that it can be raised at any time. (Supra.) Furthermore, the court may evaluate this threshold issue on its own motion whenever it is clear that there is a question regarding it. (Matter of Grand Jury Subpoenas, supra, 72 NY2d, at 311; Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C3211:ll.)
The Federal Aviation Act of 1958, as amended (49 USC, Appendix § 1301 et seq.), conferred upon the Civil Aeronautics Board the power "to regulate interstate air fares and to take administrative action against certain deceptive trade practices.” (Morales v Trans World Airlines, 504 US —, 112 S Ct 2031, 2034 [1992].) Not only did the Act not expressly preempt State law in this area, but it had contained a savings clause which provided that "[n]othing contained in this Act shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this Act are in addition to such remedies.” (49 USC, Appendix § 1506.) In 1976 the Supreme Court, noting that the savings clause only codified the principle that "a common-law right * * * is not to be abrogated 'unless it be found that the preexisting right is so repugnant to the statute that the survival of such right would * * * deprive the * * * statute of its efficacy’ ” (Nader v Allegheny Airlines, 426 US 290, 298 [1976]), found that an individual bumped from an interstate flight could bring a State law claim for fraudulent misrepresentation arising from the carrier’s deliberate overbooking. (Supra, at 300.)
Not long after the Nader decision (supra), in 1978 Congress amended the Act. It reasoned that airlines would function more efficiently and effectively, and customer costs would decrease, if there was less government regulation and more reliance on "competitive market forces.” (49 USC, Appendix § 1302 [a] [4].) Accordingly, the Airline Deregulation Act of 1978 (49 USC, Appendix § 1301 et seq.) (ADA) "introduce^] more competition and less regulation of the airline industry on a gradual, controlled basis.” (HR Rep No. 1211, 95th Cong, 1st Sess, at 4, reprinted in 1978 US Code Cong & Admin News 3737, 3740.)
Another concern of the Legislature was that the existing act contained no provisions on State jurisdiction "over airlines which provide both intrastate and interstate service.” (Id., at *275 15, reprinted in 1978 US Code Cong & Admin News 3751.)[2] Congress enacted the preemption provision, codified at 49 USC, Appendix § 1305, to clarify the Government’s role in regulating carriers and to alleviate uncertainties and conflicts. (HR Rep No. 1211, op. cit., at 15-16, reprinted in 1978 US Code Cong & Admin News 3751-3752.) Although the House Report, in its brief discussion of this provision, focuses on problems caused by conflicting State and Federal regulations regarding air fares, the report evinces an intent to prevent States from regulating the routes, the rates and the services of any carrier subject to the Act. (See, ibid.) The statute, in its final form, broadly prohibits States from enacting or enforcing "any law, rule, regulation, standard, or other provision having the force and effect of law relating to rates, routes, or services of any air carrier” authorized to provide air transportation by the Act. (49 USC, Appendix § 1305 [a] [1].)
The language in the preemption provision, along with the scope of the Act’s regulatory scheme, make it clear that States may not regulate travel routes or passenger fares. Plaintiffs’ claims in the instant case would have to be preempted, if at all, based on their relation to services, however; and, the Act does not provide equally effective guidance regarding this issue. Not surprisingly, past courts have adopted inconsistent interpretations of the provision as it pertains to services. (Compare, Anderson v USAir, Inc., 818 F2d 49 [DC Cir 1987] [reviewing contract claim but finding preemption of tort claims arising out of airline’s refusal to accommodate seating requirements of blind passenger]; Howard v Northwest Airlines, 793 F Supp 129 [SD Tex 1992] [all State claims relating to airline’s treatment of decedent preempted because of their relation to services]; Miller v Northwest Airlines, 253 NJ Super 618, 602 A2d 785 [1992] [both tort and contract claims arising out of plaintiff’s wrongful detention and confiscation of his property were attenuated to airline services and therefore neither was preempted].)
As specifically pertains to boarding practices, the Fifth, Eleventh and D.C. Circuits have generally dismissed lawsuits based on section 1305. (See, O’Carroll v American Airlines, 863 F2d 11 [5th Cir 1989], cert denied 490 US 1106 [1989]; Anderson v USAir, Inc., 818 F2d 49 [DC Cir 1987], supra; Von Anhalt v Delta Air Lines, 735 F Supp 1030 [SD Fla 1990].) *276 Both O’Carroll and Von Anhalt involved the ejection of disruptive passengers from their flights during the boarding process. In each instance, the court relied on the language in section 1305 and held that the claims were expressly preempted. (O’Carroll v American Airlines, supra, 863 F2d, at 813; Von Anhalt v Delta Air Lines, supra, at 1031 [relying on O’Carroll].)
In addition, the O’Carroll court pointed out that section 1511 of the Act "vests an air carrier with broad discretion with respect to whom will be granted or denied passage.” (O’Carroll v American Airlines, supra, 863 F2d, at 12.) That section states: "Subject to reasonable rules and regulations prescribed by the Administrator [Secretary of Transportation], any * * * carrier may also refuse transportation of a passenger or property when, in the opinion of the carrier, such transportation would or might be inimical to safety of flight.” (49 USC, Appendix § 1511 [a].) Reading section 1305 in light of section 1511, the O’Carroll court concluded that Congress intended boarding procedures — including the decision to eject passengers during boarding — to remain the province of the agency regulating interstate carriers.[3] (O’Carroll v American Airlines, supra, 863 F2d, at 12-13.) In a case not triggering a preemption analysis, the New York Court of Appeals also viewed section 1511 as one conferring broad discretion upon air carriers covered by the Act. (See, Adamsons v American Airlines, 58 NY2d 42, 46-47 [1982], rearg denied 58 NY2d 971 [1983], cert denied 463 US 1209 [1983] [citations omitted].)
Some courts have taken a contrary approach with respect to suits arising out of airlines’ boarding practices. In West v Northwest Airlines (923 F2d 657 [9th Cir 1990], cert granted and judgment vacated — US —, 112 S Ct 2932 [1992], on remand 995 F2d 148 [9th Cir 1993]), plaintiff sued for damages based on the airline’s decision to bump him from a flight. The Ninth Circuit allowed his claim for compensatory damages, but preempted the claim for punitive damages. It reasoned that although an airline’s boarding procedures are clearly services, plaintiffs claim was too attenuated to those services to "relate to” them and trigger section 1305. If it concluded *277 otherwise, the court stated, it would "unduly expand preemption and ignore our presumption against federal preemption in this traditional state law area.” (Supra, 923 F2d, at 660; see also, Miller v Northwest Airlines, 253 NJ Super 618, 602 A2d 785, supra [relying on West].)
A recent Supreme Court decision, Morales v Trans World Airlines (504 US —, 112 S Ct 2031 [1992], supra), however, clarified the meaning of the phrase "relating to” in section 1305 in a way that tends to support O’Carroll’s (supra) broader reading of the provision. "The ordinary meaning of these words is a broad one — 'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with’ * * * and the words thus express a broad pre-emptive purpose.” (Supra, 504 US, at —, 112 S Ct, at 2037, quoting Black’s Law Dictionary 1158 [5th ed 1979].) The Court analogized the provision to a similar one in the ERISA statute, which has been read to preempt all laws which have " 'a connection with or reference to such a plan.’ ” (Supra, quoting Shaw v Delta Airlines, 463 US 85, 97 [1983].)
Accordingly, the Court held that State laws "having a connection with or reference to airline 'rates, routes, or services’ are pre-empted under [section 1305].” (Morales v Trans World Airlines, supra.) Only those laws which affect airlines in a "tenuous, remote, or peripheral manner” are not preempted. (Supra, 504 US, at —, 112 S Ct, at 2040 [internal quotes and citation omitted].) To interpret the provisions more restrictively, the Court determined, would be to ignore "the sweep of the 'relating to’ language.” (Supra, 504 US, at —, 112 S Ct, at 2038.) The savings clause, which was not abrogated by amendment, has force only where the more specific preemption clause does not apply. (Supra, 504 US, at —, 112 S Ct, at 2037.)
No New York State or Federal case appears to have dealt with the precise issue at hand. However, the sweeping definition of "relating to” set forth in Morales (supra) and the persuasive logic of O’Carroll (supra) and its progeny in defining "services” compel the conclusion that plaintiffs claims are preempted by section 1305. Clearly, boarding and flying on the American flight involved "the denial, or allegedly inadequate provision of’ American’s services. (Williams v Express Airlines I, 825 F Supp 831, 833 [WD Tenn 1993] [discussing false imprisonment claim].) Enforcement of State law claims such as plaintiffs, which arise out of an airline’s decision whether *278 or not to board allegedly unruly passengers, "would result in significant de facto regulation of the airlines’ boarding practices and, moreover, would interfere with the implementation of federal regulations granting the airlines substantial discretion in this matter.” (Hodges v Delta Airlines, 4 F3d 350, 356 [5th Cir 1993] [discussing O’Carroll, supra]; see also, Gay v Carlson, 1991 WL 190584, 2 [SD NY, Sept. 17, 1991, Wood, J.] [discussing O’Carroll with approval, and finding no preemption of slander and other claims brought against individual employees].)
In West v Northwest Airlines (995 F2d 148 [9th Cir 1993], supra), the court held that although the punitive damage claims of a passenger bumped from a Northwest flight were preempted, his action for compensatory damages was maintainable. It based the decision on a Federal regulation allowing a passenger bumped from an overbooked flight to recover damages in court (see, supra, at 151-152), and thus is distinguishable from the case at hand, which does not involve overbooking. Furthermore, as Judge Brunetti points out in his dissenting opinion, the decision and the regulation on which it rests may violate the dictates of the Act and of the Supreme Court interpretation of the Act in Morales (supra). (See, supra, at 152-154 [Brunetti, J., dissenting].)
This court does not discuss the issue of whether products liability, wrongful death and personal injury actions arising out of plane crashes are preempted by section 1305 but notes that, even after Morales (supra), most courts have found no preemption. (E.g., Public Health Trust v Lake Aircraft, 992 F2d 291 [11th Cir 1993]; Harrell v Champlain Enters., 157 Misc 2d 734 [Sup Ct, Albany County 1993].) Common-law negligence actions also have not been preempted. (E.g., Butcher v City of Houston, 813 F Supp 515 [SD Tex 1993] [slip and fall case]; Margolis v United Airlines, 811 F Supp 318 [ED Mich 1993] [luggage fell on plaintiffs head].) This court does not reach this issue either, as it is beyond the scope of inquiry presented in the instant case.
For the reasons above, this case is dismissed.

. The specifics of the altercation, which are disputed by the parties, are not relevant to this decision.

. The report also discusses Federal jurisdiction, which is covered in another subsection of 49 USC, Appendix § 1305.

. O’Carroll (supra) also relied on 49 USC, Appendix former § 1374, which provided a private cause of action based on a carrier’s discriminatory or unreasonable refusal of service. (O’Carroll v American Airlines, supra, 863 F2d, at 12-13.) That provision ceased to be effective in 1985. (See, Salley v Trans World Airlines, 723 F Supp 1164, 1166 [ED La 1989].) However, that does not decrease the persuasiveness of the rest of the decision.