**Patricia PETERSON, Plaintiff,**

v.

**CONTINENTAL AIRLINES, INC., Defendant.**

**No. 96 Civ. 7589(SWK).**

United States District Court, S.D. New York.

July 7, 1997.

Upon arrival at Houston from LaGuardia Airport in New York City, Peterson and her family proceeded to the check–in counter to obtain boarding passes for their flight to Panama City. Peterson claims that they were furnished with three boarding passes: Peterson was assigned seat 21D; her niece was assigned seat 30A; and her nephew was assigned to row 21, without a specific seat designation. Continental, on the other hand, claims that Peterson's nephew was assigned seat 20F. Prior to boarding, Continental announced that they had overbooked flight 770 and would appreciate volunteers willing to relinquish their seats in return for financial compensation and hotel accommodations. Peterson did not volunteer to relinquish her seats.

After boarding the airplane, Peterson claims that she asked a flight attendant whether her nephew could sit next to her given his age and that he had not been assigned a specific seat within row 21. According to Peterson, the flight attendant gave permission for Peterson's nephew to sit next to her. In addition, Peterson claims that when her niece proceeded to seat 30A, it was occupied by another passenger. Accordingly, her niece returned to row 21 and sat down next to Peterson, so that Peterson and her family were occupying seats 21D, 21E and 21F. Peterson claims that at this time, she signaled a flight attendant in order to advise her that another passenger was occupying the seat assigned to her niece, seat 30A. Peterson alleges that in response, the flight attendant told her that her niece should remain seated next to Peterson given the crowded condition of the airplane.

When the passengers holding the seat assignments for 21E and 21F arrived and found them occupied by Peterson and her family, a flight attendant was called to exam-

APPEARANCES:

Bernstein & Bernstein, New York City by Leigh Bernstein, for Plaintiff.

Hill, Betts & Nash, L.L.P., New York City by Steven A. Lucia, for Defendant.

## *MEMORANDUM OPINION AND ORDER*

KRAM, District Judge.

In this personal injury action, defendant Continental Airlines, Inc. ("Continental") moves to dismiss the complaint of Patricia Peterson ("Peterson") pursuant to Federal Rule of Civil Procedure 12(h)(3), on the grounds that the Court lacks subject matter jurisdiction to hear Peterson's claims. For the reasons set forth below, Continental's motion is denied.

## BACKGROUND

This case arises out of an incident that occurred on May 20, 1996, while Peterson

ine the passengers' boarding passes.[1] What occurred subsequently is the main point of contention between the parties. According to Peterson, she voluntarily produced her ticket and was told that another passenger had been assigned the same seat. A supervising flight attendant also examined the tickets, and purportedly asked Peterson to relinquish her seat and informed her that she would be flown out on a subsequent flight. After declining this request, Peterson claims that a second supervisor approached her, and without discussion or investigation informed Peterson that she had to leave the airplane and that she would be physically removed if she refused. Peterson asserts that despite her requests for information, she was never advised as to why she was being asked to leave. Eventually, the police, who were summoned by the airline, questioned Peterson as to what had occurred. At this time, Peterson's niece allegedly offered to give up her seat, but was told that Peterson was the one who had to leave. Peterson claims that without provocation or warning, four police officers lifted her from her seat, handcuffed her and forcibly removed her from the airplane.

Continental's version of what transpired once the seat conflict arose differs dramatically. According to Continental, even after it was determined that the seat assignments for Peterson, her nephew and her niece were 21D, 20F and 30A respectively, she refused to move or allow her family members to move to their assigned seats. In an effort to resolve the situation, Continental personnel purportedly asked the passengers who were assigned seats 21E and 21F if they would take other seats. One passenger obliged, but the other passenger insisted on taking her assigned seat, which at the time was allegedly occupied by Peterson. Continental claims that despite numerous attempts to reason with Peterson, she refused to move or otherwise follow the instructions of the flight attendants. The flight attendants contend that they became increasingly concerned that Pe-

terson posed a danger to the safety of the flight in that if faced with an emergency, Peterson would be unwilling to follow directions. Accordingly, the captain of flight 770 determined that Peterson should be asked to leave the plane.[2] Specifically, Peterson was informed that unless she took her assigned seat, she would be directed to leave the plane. Continental claims that Peterson responded that they should call the police because she was not going to move or allow the plane to move. Upon arriving, the police allegedly explained to Peterson that she would have to either move to her assigned seat or leave the plane. Given her refusal to engage in either alternative, the police instructed Continental to deplane all the other passengers so that Peterson could be removed. Once the plane was evacuated, the police attempted to take Peterson from her seat, at which time she purportedly struck at one of the officers. She was then placed in handcuffs and removed from the plane.

On or about September 22, 1996, Peterson brought the instant action, alleging the following causes of action: (1) breach of contract; (2) negligence; (3) assault and battery; (4) false arrest; (5) false imprisonment; (6) abuse of process; (7) civil rights violations pursuant to 42 U.S.C. § 1983; and (8) defamation. She also seeks punitive damages in the amount of $10 million. In its answer, Continental denies each allegation in the complaint, and as an affirmative defense, asserts that Peterson's claims are preempted by the Federal Aviation Act.

### DISCUSSION

### I. Standard of Law

■ Under Federal Rule of Civil Procedure 12(h)(3), a court may dismiss an action "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter." Fed. R.Civ.P. 12(h)(3). Rule 12(h)(3) motions are

---

1. Although it is unclear who was sitting in which seat, both parties agree that Peterson and her family were occupying seats 21D, 21E, and 21F.

2. Continental's tariff, which is incorporated into the terms of its contract of carriage, gives Continental the right to refuse to carry any passenger

"whose conduct is disorderly, abusive or violent" or who poses a danger to the comfort or safety of themselves or other passengers. Continental Tariff, annexed to the Affidavit of Rena Walker, dated Feb. 24, 1997, as Exh. "A."

subject to the same standard as motions brought pursuant to Rule 12(b)(1). *See Berkshire Fashions, Inc. v. M.V. Hakusan II*, 954 F.2d 874, 880 n. 3 (3d Cir.1992) (motions under 12(b)(1) and 12(h)(3) are governed by identical standards except that the latter may be asserted at any time and need not be responsive to a pleading); *Becker v. Beame*, 454 F.Supp. 867, 867 n. 1 (S.D.N.Y. 1978) (Rule 12(h)(3) is governed by the same standard as applied to a motion under Rule 12(b)(1)).

Under Rule 12(b)(1), a facially sufficient complaint may be dismissed for lack of subject matter jurisdiction if the Court finds that the asserted basis for federal jurisdiction is not sufficient. *United States v. Suffolk Const. Co.*, No. 95 Civ. 9363, 1996 WL 391875, at *1 (S.D.N.Y. July 12, 1996). Once challenged, the burden of establishing a federal court's jurisdiction rests with the party asserting jurisdiction. *Thomson v. Gaskill*, 315 U.S. 442, 446, 62 S.Ct. 673, 675, 86 L.Ed. 951 (1942). In such an attack, a court must accept as true all material factual allegations in the complaint. *Atlantic Mutual Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir.1992). "However, argumentative inferences favorable to the party asserting jurisdiction should not be drawn." *Id.* A court may resolve disputed jurisdictional fact issues by reference to evidence outside the pleadings, such as affidavits. *Antares Aircraft L.P. v. Federal Republic of Nigeria*, 948 F.2d 90, 96 (2d Cir.1991), *vacated on other grounds*, 505 U.S. 1215, 112 S.Ct. 3020, 120 L.Ed.2d 892 (1992).

## II. Preemption under the Federal Aviation Act

■ The Supremacy Clause of the Constitution provides:

This Constitution, and the Laws of the United States . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, and any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

U.S. Const., Art. VI, cl. 2. Thus, any state law that conflicts with federal law is "without effect." *Maryland v. Louisiana*, 451 U.S. 725, 746, 101 S.Ct. 2114, 2128–29, 68 L.Ed.2d 576 (1981). To avoid "unintended encroachment on the authority of the States, however, a court interpreting a federal statute pertaining to a subject traditionally governed by state law will be reluctant to find preemption." *CSX Transportation, Inc. v. Easterwood*, 507 U.S. 658, 664, 113 S.Ct. 1732, 1737, 123 L.Ed.2d 387 (1993). Accordingly, a finding of preemption is justified only upon a showing that such result is the "clear and manifest purpose of Congress." *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407 (1992) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947)).

■ From 1958 until 1978, the Federal Aviation Act permitted passengers to pursue common law or state statutory remedies against airlines. *Rombom v. United Air Lines, Inc.*, 867 F.Supp. 214, 218 (S.D.N.Y. 1994). In 1978, however, the Federal Aviation Act was amended by the Airline Deregulation Act ("ADA"), which provides that a state "may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation. . . ." 49 U.S.C. § 41713(b)(1) (formerly 49 U.S.C. § 1305). The policy underlying this statute is to ensure that the states do not eviscerate federal regulations by promulgating regulations of their own. *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378–79, 112 S.Ct. 2031, 2033–35, 119 L.Ed.2d 157 (1992).

■ In the present case, resolution of the preemption issue hinges on the definition of the phrase "relating to . . . service" in Section 41713. In interpreting this phrase, the Supreme Court has acknowledged that the statute was meant to bar state actions "having a connection with or reference to airline . . . services." *Id.* at 384, 112 S.Ct. at 2037. However, the Court has cautioned against finding preemption in cases where the state law's impact on an air carrier's services is "tenuous, remote, or peripheral." *Id.* at 390, 112 S.Ct. at 2040 (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 100 n. 21, 103 S.Ct. 2890, 2901 n. 21, 77 L.Ed.2d 490 (1983)).

■ In *Rombom v. United Air Lines, Inc.*, 867 F.Supp. at 221, the district court articulated a three-part "intermediate approach" in determining whether preemption is warranted under Section 41713. The threshold inquiry in deciding whether state claims against an airline are preempted by Section 41713 is whether the activity at issue is an airline service. *Id.* If the Court determines that the activity is not an airline service for Section 41713 purposes, then the preemption inquiry ceases and the state law claims are actionable. *Id.* at 222. If, however, the activity at issue implicates an airline service, the Court must then address the second prong: Whether plaintiff's claims affect the airline service directly as opposed to "tenuously, remotely, or peripherally." *Id.* If the state claims have only an incidental effect on the airline service, there is no preemption. The third prong of the preemption inquiry focuses on whether the underlying tortious conduct was reasonably necessary to the provision of the service. *Id.; Curley v. American Airlines, Inc.*, 846 F.Supp. 280, 284 (S.D.N.Y.1994). In other words, Section 41713 "cannot be construed in a way that insulates air carriers from liability for injuries caused by outrageous conduct that goes beyond the scope of normal aircraft operations." *Rombom v. United Air Lines, Inc.*, 867 F.Supp. at 222. If, in contrast, the service was provided in a reasonable manner, then preemption is appropriate.

■ It is clear that the first prong of the preemption inquiry is satisfied in the present case. A flight crew's conduct during the boarding stage of a flight, specifically, flight attendants' efforts to locate appropriate seat assignments and resolve seat conflicts, constitutes an airline service within the meaning of Section 41713. *See Hodges v. Delta Airlines, Inc.*, 44 F.3d 334, 336 (5th Cir.1995) (air carrier service includes, inter alia, ticketing boarding procedures, baggage handling and provision of food and drink). Whether the requirements of the second prong are met, however, proves to be a more difficult question. Continental argues that Peterson's allegations are based merely on the manner in which the flight attendants provided this service, and thus that her tort claims affect the service directly rather than

tenuously. Such an interpretation of Peterson's claims weighs in favor of preemption. Yet the very nature of Peterson's allegations, *i.e.*, intentional infliction of emotional distress and civil rights violations, suggest that Continental acted outside the scope of its authority. Thus, because Peterson's claims are based on the notion that Continental abused its authority to provide a given service, preemption under Section 41713 is not warranted. *See id.* at 224 ("Because the flight crew's decision to have [plaintiff] arrested was allegedly motivated by spite or some unlawful purpose, [plaintiff]'s subsequent tort claims arising out of this decision are at best tenuously related to an airline service.").

■ Even assuming that Peterson's claims directly implicate an airline service, Continental's preemption argument fails under the third prong of the inquiry because the issue of whether Continental acted reasonably remains in dispute. Under Peterson's version of the facts surrounding her arrest, Continental cannot be said to have provided any airline service in a reasonable manner. Specifically, Peterson claims that after the seat conflict arose, she was directed to leave the airplane without explanation. Moreover, Peterson argues that by contacting the police without justification, the flight crew acted in an abusive, unprofessional and malicious manner. As such, Peterson's claims allege "outrageous conduct that goes beyond the scope of normal aircraft operations." *Id.; see also Doricent v. American Airlines, Inc.*, No. 91 Civ. 12084Y, 1993 WL 437670, at *5 (D.Mass. Oct.19, 1993) (no preemption because plaintiff's claims of "[r]acial discrimination, the intentional infliction of emotional distress, and assault and battery have nothing whatsoever to do with any legitimate or quasi–legitimate industry–wide practice of affording airline service"); *Diaz–Aguasviva v. Iberia Lineas Aereas de Espana*, 902 F.Supp. 314, 319 (D.P.R.1995) ("tortious conduct of an airline is not a regular or typical 'service' provided by the airline industry"), *vacated in part on reconsideration on other grounds*, 937 F.Supp. 141 (D.P.R.1996).

Continental erroneously relies on *Rombom v. United Air Lines, Inc.*, 867 F.Supp. at 219–23 for the proposition that any unprofessional conduct by a flight crew during the

course of a flight constitutes a "service," and thus that all claims based on such conduct are preempted under Section 41713. In *Rombom*, the district court distinguished mere acts of rudeness on the part of the crew from acts which can be categorized as outrageous or unreasonable. *Id.* at 222–23. Specifically, the district court held that plaintiff's allegations that the crew treated the passengers "like schoolchildren" did not constitute the type of outrageous conduct which would remove it from the ambit of "service" under Section 41713. *Id.* at 223. In contrast, the district court held that plaintiff's contention that the crew maliciously had her arrested constituted outrageous conduct outside the scope of a "service" within the meaning of the statute. *Id.* at 224. In the present case, Peterson alleges more than mere rudeness on the part of the flight attendants. She claims that she was treated in a discriminatory manner and that the police were summoned out of Continental's spite and malice towards her. Accordingly, at this juncture, Continental's motion to dismiss based on preemption must be denied.[3]

Significantly, this determination comports with the decisions in other cases in this Circuit which have addressed the issue of preemption for claims based on airline services. For example, in *Pittman v. Grayson*, 869 F.Supp. 1065, 1072–73 (S.D.N.Y.1994), the district court found preemption inappropriate where the plaintiff sued an airline alleging, inter alia, intentional infliction of emotional distress and false imprisonment. In so finding, the court noted that "actions in which plaintiffs invoke traditional elements of tort law ... overwhelmingly incline against federal preemption." *Id.; see also Curley v. American Airlines, Inc.*, 846 F.Supp. at 284 (plaintiff's state law claims of negligence and false imprisonment, based on fact that captain informed ground personnel about pas-

senger's smoking habit, not preempted since such claims are based on conduct that is only tenuously related to airline services); *Sedigh v. Delta Airlines, Inc.*, 850 F.Supp. 197, 200 (E.D.N.Y.1994) (no preemption of claims of intentional infliction of emotional distress and false imprisonment arising out of captain's alleged verbal and physical abuse of passenger).

Finally, the Court notes that the holding in this case is consistent with the policy underlying the preemption clause of Section 41713. Section 41713 is an economic deregulation statute designed to promote competitive rates, routes and services among the nation's airlines. *See Morales v. Trans World Airlines, Inc.*, 504 U.S. at 378, 112 S.Ct. at 2033; *see also Von Hundertmark v. Boston Professional Hockey Ass'n, Inc.*, No. 93 Civ. 1369, 1996 WL 118538, at *5 (E.D.N.Y. March 7, 1996) (purpose of the ADA's preemption clause is to prevent states from interfering with "the development of an air transportation system driven to higher levels of innovation and efficiency by economic competition"). Peterson's state law tort action neither frustrates the goal of economic deregulation in the airline industry nor significantly affects Continental's competitive posture. Peterson is alleging intentional torts "which represent the civil offspring of criminal behavior." *Pittman v. Grayson*, 869 F.Supp. at 1074. The ADA is not intended to be a "safe harbor for airlines from civil prosecution for the civil analogues of criminal offenses." *Id.*[4]

## III. Punitive Damages

Continental argues that even if Peterson's tort claims are not preempted, her claims for punitive damages must be dismissed. Continental relies on *Travel All Over the World, Inc. v. Saudi Arabia*, 73

---

**3.** Similarly, Continental's reliance on *O'Carroll v. American Airlines, Inc.*, 863 F.2d 11 (5th Cir.), *cert. denied*, 490 U.S. 1106, 109 S.Ct. 3158, 104 L.Ed.2d 1021 (1989) is misplaced. In that case, it was clear from the evidence presented at trial that the plaintiffs were removed from the plane due to their boisterous and intoxicated state. Accordingly, unlike the present case, there was no dispute that the flight crew's conduct in *O'Carroll* constituted a service which was provided in a reasonable manner. In any event, numerous courts have attacked the decision in

*O'Carroll* as overbroad. *See, e.g., Hodges v. Delta Airlines, Inc.*, 4 F.3d 350 (5th Cir.1993).

**4.** Significantly, the Court notes that even if Peterson's state law tort claims were preempted, dismissal for lack of subject matter jurisdiction would be inappropriate because (1) Peterson also alleges a civil rights claim pursuant to 42 U.S.C. § 1983; and (2) Peterson alleges that the Court has jurisdiction due to diversity of citizenship, pursuant to 28 U.S.C. § 1332.

**252**

F.3d 1423 (7th Cir.1996), in which the Court of Appeals for the Seventh Circuit held that plaintiffs' claim for punitive damages was preempted by the ADA. The Seventh Circuit did not find, however, that claims punitive damages are always preempted under the ADA. Rather, relying on *American Airlines, Inc. v. Wolens*, 513 U.S. 219, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995), the Seventh Circuit stated that "*Wolens* suggests that the claim for punitive damages is preempted by the ADA, *provided that it relates to airline rates, routes or services.*" *Travel All Over the World, Inc. v. Saudi Arabia*, 73 F.3d at 1432 n. 8 (emphasis added). Because the Seventh Circuit had found that plaintiffs' underlying contract claim "clearly relate[d] to [the airline]'s failure to provide its services," the claim for punitive damages was preempted. *Id.* Contrary to Continental's assertions, such a conclusion is not warranted in the present case. As discussed above, Peterson's claims are based on allegations that Continental's conduct exceeded the bounds of reasonable service and involved unprofessional acts of malice. Since at this juncture the Court cannot conclusively find that Peterson's tort claims clearly relate to the provision of airline services, preemption of the claim for punitive damages is not warranted.[5]

## CONCLUSION

For the reasons set forth above, Continental's motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(h)(3) is denied.

SO ORDERED.

---

**5.** The Court notes, however, that Peterson's assertion that *Travel All Over the World, Inc. v. Saudi Arabia*, 73 F.3d 1423 (7th Cir.1996) is inapposite because it involved contract rather than tort claims is without merit. First, Peterson alleges both tort claims and breach of contract claims. Second, in *Travel All Over the World*, although plaintiffs' claim was based on airline services, preemption was not warranted because the services arose out of a private contract between the parties rather than state law. *See id.* (action enforcing a private contract does not constitute enactment or enforcement of any state law and thus is not preempted under the ADA).

However, plaintiffs' claim for punitive damages was preempted, because "punitive damages represent an 'enlargement or enhancement [of the bargain] based on state laws or policies external to the agreement.'" *Id.* at 1432 n. 8 (quoting *American Airlines, Inc. v. Wolens*, 513 U.S. 219, 233, 115 S.Ct. 817, 826, 130 L.Ed.2d 715 (1995)). Similarly, in the present case, if it were subsequently determined that Peterson's tort claims clearly relate to the provision of airline services, then for the reasons set forth in *Travel All Over the World*, both her tort claims and her claim for punitive damages would be preempted.