**Ella Mae PUCKETT, Plaintiff,**

v.

**NORTHWEST AIRLINES, INC. and Express Airlines, I, Inc., d/b/a Northwest Air Link, Defendants.**

**No. 00–CV–4244 (ILG).**

United States District Court,
E.D. New York.

Feb. 14, 2001.

Paul E. Kerson, John F. Duane, Leavitt Kerson & Leffler, New York City, for plaintiff.

## MEMORANDUM AND ORDER

GLASSER, District Judge.

### SUMMARY

Defendants Northwest Airlines, Inc. and Express Airlines, I, Inc., d/b/a Northwest Air Link, bring this motion to dismiss plaintiff Ella Mae Puckett's complaint in its entirety for failure to state claims upon which relief can be granted. Puckett seeks compensation for constitutional deprivations, statutory violations, and tort injuries incurred when defendants allegedly refused to board her, Alma Brown Sweeney (Puckett's disabled sister), and Renee Shahelly (Sweeney's attendant) onto a flight leaving Memphis, Tennessee for Montgomery, Alabama. For the reasons that follow, the defendants' motion is granted.

### BACKGROUND

In July 1997, Puckett purchased a round trip ticket from defendant Northwest Airlines, Inc. to fly from LaGuardia Airport in Queens, New York to Montgomery, Alabama with a plane change in Memphis, Tennessee. (Compl.¶ 10) Puckett intended to travel with her sister, Alma Brown Sweeney, who is disabled and uses a wheelchair, and Sweeney's attendant Renee Shahelly. The three were scheduled to leave New York on August 1, 1997 and return on August 11, 1997. (*Id.* ¶ 11) Puckett claims that defendants refused to board her, and her companions, onto the Montgomery bound plane from Memphis because defendants "could not accommodate ... Sweeney's disability," which caused Puckett to be "delayed in attending a family function, ... caused [her] to suffer great pain and mental cruelty, ... deprived [her] of her physical liberty, ... and forced [her] to incur [in]numberable expenses and delays." (*Id.* ¶ 12, 13)

Puckett alleges Constitutional, statutory, and state law causes of action in her complaint: violations of the Fourth, Fifth, and Eighth Amendments to the United States Constitution (Counts I and II); deprivation of her civil rights pursuant to 42 U.S.C. § 1983 and the Americans With Disabilities Act of 1990, 42 U.S.C. §§ 12101–12213, ("ADA") and violation of the Airline Deregulation Act of 1978 ("Air-

line Deregulation Act") (Count III); intentional infliction of emotional distress (Count IV); and negligence (Count V). Puckett initially brought this case *pro se* in the Civil Court of the City of New York, Queens County, which dismissed the complaint on March 30, 1999 because the complaint involved defendants' "boarding policies" and because the court's subject matter jurisdiction was preempted by the Airline Deregulation Act. (Pl.'s Mem. of Law in Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Memo."), Ex. 1).[1]

## DISCUSSION

Defendants move to dismiss Puckett's intentional infliction of emotional distress claim as barred by the statute of limitations, and the remainder of her claims pursuant to Fed.R.Civ.P. 12(b)(6). As a preliminary matter, the court notes that Puckett seeks to recover for defendants' refusal to board *Sweeney* onto their plane, an injury generously described as tenuously related to the harms alleged. Puckett's standing to recover for the acts and omissions alleged in the complaint may be doubted, as "the critical standing question is whether the plaintiff has demonstrated a personal, distinct, and palpable injury-in-fact that is fairly traceable to the defendant's allegedly unlawful conduct, and that such an injury is likely to be redressed by a favorable judicial decision." *Nat'l Treasury Employees Union v. United States Dep't of the Treasury*, 25 F.3d 237, 241 (5th Cir.1994) (citing *Metropolitan Wash. Airports Auth. v. Citizens for Abatement of Aircraft Noise, Inc.*, 501 U.S. 252, 264–65, 111 S.Ct. 2298, 115 L.Ed.2d 236, (1991)). Since neither party addresses these issues and since the court can grant defendants' motion to dismiss upon the arguments presented, the court now turns to those arguments.

### I. Legal Standard

Defendants move to dismiss the complaint "for failure to state a claim upon which relief can be granted." Fed. R.Civ.P. 12(b)(6). A court must, in deciding such a motion, accept the averments of the complaint as true and construe all reasonable inferences in favor of the non-moving party. *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir.1995). Thus, a complaint should be dismissed on a motion under Rule 12(b)(6) only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

### II. Constitutional and § 1983 Claims

Defendants properly argue that Puckett's Fourth, Fifth, and Eighth Amendment claims should be dismissed because her complaint fails to allege that defendants are state actors. As these Amendments protect persons from governmental intrusions, Puckett must plead facts showing that the alleged Constitutional violations are attributable to the State. *See, e.g., Feldman v. United States*, 322 U.S. 487, 490, 64 S.Ct. 1082, 88 L.Ed. 1408, *reh'g denied*, 323 U.S. 811, 65 S.Ct. 26, 89 L.Ed. 646 (1944) ("[F]or more than one hundred years ... one of the settled principles of our Constitution has been that [the Fourth and Fifth] Amendments protect only against invasion of civil liberties by the Government whose conduct they alone limit."). Likewise, § 1983 provides redress for deprivations of constitutional and federal statutory rights by persons acting under color of state law. 42 U.S.C. § 1983. Without an allegation of state action or conduct under color of state law, Puckett's § 1983 claim must also fail. *See Lugar v. Edmondson Oil Co., Inc.*, 457

---

1. It is not clear what causes of action Puckett asserted in Civil Court of the City of New York. The court may presume from the Civil Court's reference to *Hirsch v. American Airlines*, 160 Misc.2d 272, 273, 608 N.Y.S.2d

606, 606 (N.Y.City Civ.Ct.1993), a case in which the court dismissed plaintiff's state law claims as preempted by the Airline Deregulation Act, that Puckett asserted similar claims in the Civil Court.

U.S. 922, 928, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982) ("In cases under § 1983, 'under color' of law has consistently been treated as the same thing as the 'state action' required under the Fourteenth Amendment.") (citing *U.S. v. Price*, 383 U.S. 787, 794, n. 7, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966) (internal quotations omitted)).

Puckett attempts to salvage these claims by now suggesting that "the threat of Memphis Airport security was present when defendants refused to allow plaintiff ... to board defendants' airplane." (Pl.'s Mem. at 3) There is not even the vaguest mention of Memphis airport security in the complaint or in Puckett's affidavit in opposition to this motion. The gratuitous interjection of it reflects an attempt, a reckless one, to suggest some state action.

Puckett's reliance on *Peterson v. Continental Airlines, Inc.*, 970 F.Supp. 246, 251, n. 4 (S.D.N.Y.1997) is entirely misplaced. In *Peterson*, a disagreement between the plaintiff/passenger and Continental Airlines over the plaintiff's seat assignment escalated to a point where the police were summonsed onto the aircraft. *Id.* at 248. Although the parties disagreed as to what exactly transpired next, both agreed that the police placed plaintiff in handcuffs and removed her from the aircraft. *Id.* The issue before the *Peterson* court was whether the court had subject matter jurisdiction over plaintiff's claims given defendant's argument that the Federal Aviation Act preempted all of plaintiff's claims. Nonetheless, when the *Peterson* court noted that dismissal of the plaintiff's § 1983 claim was inappropriate, it was because upon the facts of that case, there could be no question about the existence of state action.

Puckett's complaint lacks any allegation of state action, compelling the dismissal of her claims under the Fourth, Fifth, and Eighth Amendments and under § 1983.

**2.** Puckett also argues that defendants are within the reach of the ADA because they engaged in unspecified unlawful conduct at a Howard Johnson motel. (Pl.'s Memo at 4)

## III. *Americans With Disabilities Act Claim*

Defendants argue that Puckett's cause of action under the ADA must be dismissed because aircraft are expressly excluded from the reach of this statute. The ADA prohibits, among other things, discrimination against individuals on the basis of disability in places of "public accommodation" and in the provision of "specified public transportation services provided by a private entity that is primarily engaged in the business of transporting people...." 42 U.S.C. §§ 12182(a), 12184(a). Aircraft are expressly excluded from the definition of "specified public transportation." 42 U.S.C. § 12181(10) ("The term 'specified public transportation' means transportation by bus, rail, or other conveyance (other than by aircraft) that provides the general public with general or special service ... on a regular and continuing basis.") Puckett attempts to avoid dismissal by arguing instead that defendants' allegedly actionable conduct occurred in the airline *terminal*, a public accommodation allegedly embraced the ADA.[2] "Public accommodations" include "terminal[s], depot[s], or other station[s] used for *specified public transportation.*" 42 U.S.C. § 12181(7)(G) (emphasis added).

Defendants argue, logically, that the preclusion of aircraft from the definition of "specified public transportation" similarly removes airport terminals from the reach of the ADA. An Arizona District Court case casts doubt on this logic. In *Adiutori v. Sky Harbor Int'l Airport*, 880 F.Supp. 696, 704 (D.Ariz.1995), *aff'd*, 103 F.3d 137, 1996 WL 673805 (9th Cir.1996), the court dismissed an airline passenger's ADA claim against a skycap service that provided the passenger with wheelchair transportation assistance at a terminal of the Sky Harbor International Airport. The

Since this new allegation is beyond the scope of Puckett's complaint, the court will not consider the argument.

court reasoned, " § 12182 does not state that it applies to entities which merely provide a service in a place of public accommodation, e.g. a terminal, etc.—it only applies to entities which own, lease or operate a place of public accommodation and the plaintiff does not explain how [defendant] fits into that definition." *Id.* Puckett likewise fails to explain how defendants, in allegedly refusing to board plaintiff in the terminal area, fit into the definition of public accommodation.

■ The foregoing notwithstanding, obscured by this discussion of the applicability of the ADA to airplanes and whether an airport terminal is a place of "public accommodation" within the meaning of that statute, is the fact that Puckett is not disabled nor does she claim that she is. It was her disabled sister, and not she, who could not be accommodated on the flight from Memphis. There is no allegation that *she* could not have proceeded on to Montgomery. She elected not to. Puckett provides no authority for a claimed violation of the ADA derived from the disability of her sister, nor is the court aware of any. Accordingly, the court must grant defendants' motion as to Puckett's ADA claim.

## IV. *Airline Deregulation Act Claim*

■ In her complaint, Puckett claims that defendants' refusal to board her onto their plane violated the Airline Deregulation Act, but does not specify which provision defendants allegedly violated. Defendants focus on the now repealed provision of the Airline Deregulation Act that prohibited air carriers from subjecting persons to "unjust discrimination or . . . undue or unreasonable prejudice or disadvantage," 49 U.S.C. app. § 1374(b) (1982) (repealed 1983), and move to dismiss this claim because the

Airline Deregulation Act does not grant a private right of action. In turn, Puckett argues that: (i) defendants cannot use the Airline Deregulation Act to both defeat subject matter jurisdiction in Civil Court of the City of New York and in this court; and (ii) federal courts have in fact permitted private claims under this statute. As to Puckett's first contention, the court must observe that the only issue before it relating to the Airline Deregulation Act is whether there exists a private right of action; the propriety of the Civil Court's dismissal is not before this court.

Before Congress repealed it on January 1, 1983, § 404(b) of the Federal Aviation Act, then codified at 49 U.S.C. app. § 1374(b), prohibited, in part, ". . . subject[ing] any particular person, port, locality, or description of traffic in air transportation to any unjust discrimination or any undue or unreasonable prejudice or disadvantage in any respect whatsoever." The Airline Deregulation Act, Pub.L. 95–504, 92 Stat 1705, repealed all of § 404(b) except that the section required air carriers to provide "safe and adequate service." 49 U.S.C. app. § 1551(a)(2)(B) (recodified at 49 U.S.C. § 41702). As Judge Gleeson of this court has previously held, a claim for discrimination under the Federal Aviation Act is no longer available and thus a private right of action may not lie to enforce a non-existent statute. *Fields v. BWIA Int'l Airways Ltd.*, No. 99 CV 2493, 2000 WL 1091129, at *4 (E.D.N.Y. July 7, 2000).[3]

## V. *Intentional Infliction of Emotional Distress Claim*

■ Defendants contend that Puckett's claim for intentional infliction of emotional distress must be dismissed as time-barred. Puckett's opposition papers do not address

---

**3.** The court notes that the Aircraft Safety Act of 2000 includes a section that prohibits air carriers from subjecting persons in air transportation to discrimination on the basis of race, color, national origin, religion, sex, or ancestry. 49 U.S.C. § 40127. This section is inapplicable here, there being no claim of discrimination upon any of those bases and because it is not applicable to discriminatory acts based on disability and it only applies to fiscal years beginning after September 30, 1999. P.L. 106–181.

this contention. In New York, an action for intentional infliction of emotional distress is subject to a one year statute of limitations. *See Abdullajeva v. Club Quarters Inc.,* No. 96 Civ. 0383, 1996 WL 497029, 1996 U.S.Dist. LEXIS 12805, at * 20 (S.D.N.Y. Aug. 29, 1996) (citing N.Y.C.P.L.R. § 215(3) and *Gallagher v. Directors Guild of America, Inc.,* 144 A.D.2d 261, 262, 533 N.Y.S.2d 863, 864 (N.Y.A.D. 1st Dep't 1988), *appeal denied,* 73 N.Y.2d 708, 540 N.Y.S.2d 1003, 538 N.E.2d 355 (1989)). Puckett's claim, assuming she had one that was legally viable, was not filed until July 20, 2000. Consequently, this claim must be dismissed.

## VI. *Negligence Claim*

■ To say that the negligence claim is sparsely pleaded would be an exaggeration. It is as follows: "23. Plaintiff incorporates herein by reference the allegations contained in paragraphs 1 through 22 herein." (Compl.¶ 23) As has been heretofore discussed, paragraphs one through twenty-two allege no actionable wrong to Puckett. The duty owed her was to exercise the degree of care a reasonable defendant would have exercised under the circumstances to prevent an unreasonable risk of harm to her. Even given the hypothetical assumption that some duty owed to her sister and her sister's companion was breached, the plaintiff would have the court hold that the defendants should have foreseen that precluding them from continuing on the last leg of their journey would have in some way harmed her. The duty of an airline does not extend that far even if they knew that the plaintiff and Sweeney were sisters. "Negligence in the air, so to speak, will not do." *Palsgraf v. Long Island Railroad Co.,* 248 N.Y. 339, 341, 162 N.E. 99 (1928).

## CONCLUSION

For the reasons discussed, the defendants' motion is granted and plaintiff's Counts I through V inclusive are dismissed.

SO ORDERED.