OPINION OF THE COURT
Marcy S. Friedman, J.
This is a personal injury action in which plaintiff was injured on September 12, 1997 when she slipped and fell on steps in the lobby of 570 West 183rd Street in Manhattan. Defendant Dr. Ramon Guzman and defendants St. Nicholas Associates, Stanley Stahl, Michael Stahl and Stahl Associates Ltd. (Stahl defendants) move for summary judgment pursuant to CPLR 3212 dismissing the complaint. Defendants also move for dismissal of their cross claims against each other. The motions are consolidated for the purposes of this decision and order.
The standards for summary judgment are well settled. The movant must tender evidence, by proof in admissible form, to establish the cause of action “sufficiently to warrant the court as a matter of law in directing judgment.” (CPLR 3212 [b]; Zuckerman v City of New York, 49 NY2d 557, 562 [1980].) “Failure to make such showing requires denial of the motion, regardless of the sufficiency of the opposing papers.” (Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853 [1985].) Once such proof has been offered, to defeat summary judgment “ ‘the opposing party must “show facts sufficient to require a trial of any issue of fact” ’ (CPLR 3212, subd [lb]).” (Zuckerman v City of New York, supra at 562.)
The material facts are largely undisputed: Plaintiff, a home health care aide for nonparty Delia Pichardo, had taken Ms. Pichardo to a doctor’s appointment with defendant Guzman. Dr. Guzman was the tenant of an office located at the premises owned by St. Nicholas Associates and managed by Stahl Associates Ltd. The office was located off the ground floor lobby, which had two steps leading to the street entrance of the premises. Plaintiff was lowering Ms. Pichardo in her wheelchair down the two steps when plaintiff slipped and fell, sustaining her injuries.
Plaintiff makes no claim that defendants caused or created a defect on the steps, or negligently maintained the steps upon which she fell. Rather, plaintiff contends that defendants violated the Americans with Disabilities Act (ADA) (42 USC § 12181 et seq.), Executive Law § 296 (Human Rights Law), and the Administrative Code of the City New York (§ 27-292.1 et seq.), by failing to provide a wheelchair ramp to accommodate the premises for disabled persons, such as Ms. Pichardo, and *214 persons associated with disabled persons, such as plaintiff, and that this failure proximately caused plaintiffs injuries.[1] In moving to dismiss the complaint, defendants argue that plaintiff has no private right of action against defendants under the ADA and, in the alternative, that plaintiff is not an associated person within the meaning of the ADA.
The ADA prohibits discrimination against any individual “on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.” (42 USC § 12182 [a].) The ADA further provides that it is “discriminatory to exclude or otherwise deny equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association.” (Id. § 12182 [b] [1] [E].) For purposes of this statute, a “public accommodation” is defined to include (if the operations of such entity affect commerce) a “professional office of a health care provider.” (Id. § 12181 [7] [F].) Prohibited discrimination includes “a failure to remove architectural barriers ... in existing facilities . . . where such removal is readily achievable.” (Id. § 12182 [b] [2] [A] [iv].)
Defendants cite persuasive authority that the ADA does not create a private cause of action for damages. (See, Hunt v Me-harry Med. Coll., 2000 WL 739551, 2000 US Dist LEXIS 7804 [SD NY, June 8, 2000]; Mirando v Villa Roma Resorts, Inc., 1999 WL 1051118, 1999 US Dist LEXIS 17887 [SD NY, Nov. 19, 1999]; Anonymous v Goddard Riverside Community Ctr., Inc., 1997 WL 475165, 1997 US Dist LEXIS 9724 [SD NY, July 10, *215 1997].)[2] Defendants further argue that plaintiff’s damages claims, because based on violation of the ADA, are barred.[3]
In opposition, plaintiff does not appear to dispute that the ADA does not provide a right of action for damages for its violation. Rather, plaintiff argues that notwithstanding the absence of such a right of action, the ADA may serve as a measure of the standard of care in a state law tort action. (See plaintiffs supporting affidavit at 1-3.)
The parties’ arguments involve two analytically distinct concepts: “(1) implication of a private right of action from a statute that does not expressly create such a cause of action, and (2) importation of a standard of conduct from a statute, violation of which may be proof of negligence.” (Loewy v Stuart Drug & Surgical Supply, Inc., 1999 WL 216656, *1, 1999 US Dist LEXIS 5208, *5 [SD NY, Apr. 14, 1999].) As plaintiff correctly points out, although a statute does not provide for a private right of action, its standard of care may be relevant for purposes of a negligence action. (See id. [and cases cited therein]; Smith v Wal-Mart Stores, Inc., 167 F3d 286 [6th Cir 1999].) New York courts have long held that “[w]hen a statute designed to protect a particular class of persons against a particular type of harm is invoked by a member of the protected class, a court may, in furtherance of the statutory purpose, interpret the statute as creating an additional standard of care” — that is, a standard of care additional to common-law negligence standards. (Dance v Town of Southampton, 95 AD2d 442, 445 [2d Dept 1983]; Karchere v Pioneer Transp. Corp., 213 AD2d 700 [2d Dept 1995]; see also Elliott v City of New York, 95 NY2d 730 [2001].)
*216 The threshold issue here is thus whether the ADA imposes a statutory standard of care. £‘[T]he determination as to whether a statute imposes a statutory standard of care turns on whether the underlying policy of the legislation is the protection of a certain class of individuals and whether judicial recognition of a statutory standard will further that policy of protection.” (Wolfson v Glass, 301 AD2d 843, 844 [3d Dept 2003] [internal quotation marks and citations omitted].) As further explained: “Where a regulatory statute contains no reference to a civil remedy for its violation, the method most frequently used by the judiciary to justify recognition of a standard of care is to discern an implied or presumed legislative intent to create such a standard. A more satisfactory explanation for judicial recognition of such a standard, however, is furtherance of the statute’s underlying policy for the protection of certain individuals.” (Dance, 95 AD2d at 446.)
Applying these standards, the court concludes that the ADA imposes a standard of care applicable to this state law negligence action. While the ADA’s expressed, overriding purpose is to eliminate discrimination against individuals with disabilities (see 42 USC § 12101 [b]), the court finds that the ADA also has a public safety objective insofar as the statute addresses access to facilities by removal of physical barriers. As one court has reasoned: “Obviously, if a handicapped person cannot safely use a facility or accommodation, access to the facility or accommodation is seriously compromised. This reality is closely akin to the actual denial of access, because if a person cannot safely use a building, then access to the building is significantly restricted. And restricted access can amount to discrimination.” (Theatre Mgt. Group v Dalgliesh, 765 A2d 986, 991 [DC 2001].) The ADA’s safety objective is further evidenced by the implementing regulations, which contain detailed specifications for the removal of physical barriers by means of ramps. (See 36 CFR part 1191, Appendix A, §§ 4.3.8, 4.8.) Although no New York case has decided the issue, out-of-state cases are in accordance with this conclusion that the ADA imposes a standard of care. (See Smith v Wal-Mart Stores, Inc., 167 F3d 286 [1999], supra; Theatre Mgt. Group, 765 A2d at 991; see also Warrick v Capabilities, Inc., 299 AD2d 622 [3d Dept 2002] [not reaching issue of whether ADA imposes standard of care, as any violation of ADA was not a proximate cause of plaintiffs injuries].)
The court further concludes that plaintiff is a person within the class of persons that the ADA seeks to protect. The ADA *217 prohibits discrimination against “an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association.” (42 USC § 12182 [b] [1] [E].) While the parties have not cited any New York case which decides, or addresses, the issue of a health aide’s status as an associated person, there is persuasive federal authority that a health care provider has standing as an associated person under the ADA where it presents evidence that it was discriminated against “because it cares for and/or associates with individuals who have disabilities.” (MX Group, Inc. v City of Covington, 293 F3d 326, 335 [6th Cir 2002] [drug treatment provider denied permit to open methadone clinic held to have standing to sue on its own behalf for violation of ADA].) Indeed, the prohibition against discrimination against associated persons was “intended to ensure that entities such as health care providers, employees of social service agencies, and others who provide professional services to persons with disabilities are not subjected to discrimination because of their professional association with them.” (Id. at 335 [internal quotation marks omitted] [analogous tit II, 42 USC § 12132].)
Puckett v Northwest Airlines, Inc. (131 F Supp 2d 379 [ED NY 2001]), the sole authority on which defendant relies, is not to the contrary. In that case, a woman traveling with her wheelchair-bound sister claimed that the airline violated the ADA by denying passage to her on a particular flight because the airline could not accommodate her sister’s wheelchair on that flight. In dictum, after concluding that aircraft are excluded from the ADA, the court dismissed the woman’s claim, reasoning that she could have been accommodated on the flight, but “elected not to” travel without her sister, and that there was “no authority for a claimed violation of the ADA derived from the disability of her sister.” (Id. at 383.) In the instant case, in contrast, plaintiff was employed as the health aide for a eoncededly disabled client, and had no choice but to escort her down the stairs at defendants’ premises. As a result of her employment caring for a disabled person, she was denied the accommodation which was also denied to her client.
As the court thus concludes that the ADA imposes a safety standard, and that plaintiff falls within the class of persons entitled to its protection, the ADA may be raised as a standard of care for purposes of establishing negligence in this action. Ordinarily, violation of a statute that establishes a specific safety duty constitutes negligence per se, while violation of a munici *218 pal ordinance constitutes only evidence of negligence. (Elliott, 95 NY2d at 734.) In the case of negligence per se, if the violation of the statute is proved, the violating party must be found negligent, although the plaintiff must still establish that the statutory violation was a proximate cause of injury. (Dance, 95 AD2d at 445.) However, the attribution of negligence per se to a statutory violation should not be applied inflexibly, but requires an exercise of judgment as to the appropriateness of the statute for that purpose. (See id. at 446.) Here, as held above, the ADA does not create a private cause of action for damages for its violation. If mere proof of a violation of the ADA were to establish negligence per se, plaintiff would effectively be afforded a private right of action that the ADA does not recognize. The court accordingly holds that proof of a violation of the ADA may only constitute evidence of negligence, not negligence per se.[4]
Plaintiff also asserts violations of state and local laws. As to Executive Law § 296 (2) (a), the state law which prohibits discrimination against disabled persons in public accommodations, plaintiff fails to offer any legal support for her contention that the statute prohibits discrimination against associated persons, and there is authority to the contrary. (Abdel-Khalek v Ernst & Young, 1999 WL 190790, 1999 US Dist LEXIS 2369 [SD NY, Apr. 7, 1999].) As to the Building Code provisions which establish access requirements for people with disabilities (Administrative Code of City of NY § 27-292.1 et seq.), plaintiff acknowledges that she is not a member of the class protected by this local law. (Plaintiff’s affidavit in opposition to Stahl defendants’ motion at 5.) As plaintiff is not a member of the protected class under the state or local laws, she cannot prevail on a claim under these laws. (See Dantonio v Kaleida Health, 288 AD2d 866 [4th Dept 2001], lv denied 98 NY2d 604 [2002].) Nor does plaintiff raise a triable issue of fact as to violations of the Building Code.
Finally, as to defendants’ cross motions to dismiss their indemnification claims against each other, neither defendant demonstrates entitlement to judgment as a matter of law. The Stahl defendants fail to set forth any grounds for dismissal of *219 defendant Guzman’s claim for common-law indemnification or contribution. Defendant Guzman argues that he is entitled to dismissal of the Stahl defendants’ indemnification claim because he was a tenant without control over the common areas of the premises where plaintiff fell. However, Dr. Guzman does not address his liability under ADA § 12182 (a) which prohibits discrimination by lessees. The branch of the Stahl defendants’ motion for dismissal of all claims against individual defendants Michael Stahl and Stanley Stahl is unopposed and will be granted.
It is accordingly hereby ordered that the Stahl defendants’ motion for summary judgment is granted only to the extent of dismissing the complaint and all cross claims against defendants Michael Stahl and Stanley Stahl; and it is further ordered that defendant Guzman’s motion for summary judgment is denied.

. Plaintiffs bill of particulars alleges the defendant’s negligence was a failure to prove a means of egress in compliance with the Americans with Disabilities Act, article 15 of the Executive Law of the State of New York, and title 27 of the Administrative Code of the City of New York (Local Law No. 58 [1987] of the City of NY); a failure to provide handicapped access; a failure to have a ramp; and a failure to provide assistance knowing that the aforesaid defective condition existed. Additionally, defendant was negligent in not providing a handrail or ramp even though he knew or should have known that the aforementioned steps served a doctor’s office.

. In so holding, the courts have reasoned that the ADA does not by its terms provide for a private right of action for damages but, rather, provides persons who are subjected to discrimination with the remedies for enforcement set forth in 42 USC § 2000a-3. (42 USC § 12188 [a].) Section 2000a-3, in turn, subjects those who have engaged in or are about to engage in prohibited discrimination to “a civil action for preventive relief only” — that is, injunctive relief as opposed to damages. (Anonymous, 1997 WL 475165, *2, 1997 US Dist LEXIS 9724, *5.)

. Defendants also argue that their building was not in violation of the ADA by reason of their failure to provide handicapped access such as a ramp. They thus assert that “there is no proof’ that the ADA was violated “by having two steps leading to a vestibule in a building of the age and type in question.” (Stahl defendants’ affidavit in support ¶ 9.) However, as the movants for summary judgment, defendants have the burden of making a prima facie showing that the ADA requirement of removal of architectural barriers is not applicable to the building given its age and type. They fail, however, to offer any evidence in support of this assertion.

. Neither party cites, and the court’s own research has not located, any New York case in which violation of a federal statute was held to establish negligence per se. A question, which the parties have not addressed, exists as to whether a statute whose violation constitutes negligence per se, and which alters the New York State common law, can be enacted by a legislative body other than the New York State Legislature. (Cf. Elliott v City of New York, 95 NY2d 730 [2001], supra.)