OPINION OF THE COURT
Sherry Klein Heitler, J.
Plaintiffs William Bartman and Art Resources Transfer, Inc. (ART) filed a complaint against defendants Gregg L. Shenker and Onbar, LLC alleging that defendants discriminated against Bartman and ART (Bartman’s employer) on the basis of Bart-man’s physical disability,[1] creating a hostile environment, and retaliating against ART as a result of Bartman’s request that defendants accommodate his disability. Defendants now move to dismiss the complaint.
Defendant Onbar owned 210 11th Avenue in New York and defendant Shenker was employed by a managing agent engaged by Onbar. ART leased office space in the building from 1998 to December 2003. Bartman was ART’s executive director. The parties agree that the building has two means of entry: a front entrance without any form of handicap access (such as a ramp or handrail), and a side entrance equipped with a handrailing. The parties also agree that, in September 1999, Bartman reported to Shenker that he had fallen on the steps leading up to the front entrance and requested that a handrailing be installed there to prevent other such mishaps. Shenker informed him that this would not be possible due to the design of the front steps and entryway. Bartman, however, alleges that he commissioned the drafting of workable designs for the installation of a handrail and showed them to Shenker, who rejected all such proposals. Shenker denies having seen such designs.
Bartman alleges that he also asked for a permanent ramp to be installed at the front entrance, but his request was refused. According to Shenker, such a ramp was not feasible because it would have obstructed the door to the boiler room and would have covered a metal grating located next to the side entrance. *858 Bartman asserts that a ramp was, in fact, feasible, because the boiler room was always accessed through the lobby and the metal grating in question was later cemented over.
Bartman began using his own portable ramp to remedy the situation. Shenker claims Onbar accommodated Bartman by allowing him to store the ramp in the lobby, but Bartman claims Onbar acquiesced in storing the ramp there only because other tenants were constantly asking to borrow it for their own disabled visitors. Shenker also claims that the building was handicapped-accessible via the side entrance, which was equipped with a handrail, and that other tenants regularly used that entrance. Bartman, however, alleges that the side entrance was locked and used only for trash removal, not for public access. Additionally, Bartman asserts that this entrance led to a freight elevator that remained inoperable for years, making it impossible for him to access the rest of the building from the side entrance. This claim contrasts with defendants’ assertion that both entrances led to elevators that provided access to the entire building.
Shenker alleges that neither Bartman nor anyone at ART complained of the building’s alleged inaccessibility to the handicapped after Bartman’s September 1999 complaint. Bartman claims that, every six months throughout ART’s five-year tenancy, he filed complaints with the New York City Fire Marshal and the New York City Department of Buildings and Safety. Bartman claims that when investigators visited the building in response to those complaints, Shenker told them that the building was in “as is” condition in order to avoid being fined.
Shenker alleges that ART violated its obligations under its lease, in that it was in arrears as to rent and had installed air-conditioners in violation of Onbar’s policy. Plaintiffs maintain that defendants lodged these complaints against ART as a means of retaliating for Bartman’s complaints concerning the building’s inaccessibility. Specifically, plaintiffs allege that ART always presented its rental payments on time but defendants held the payments and deposited them late to create the illusion that ART was in arrears. Plaintiffs also claim that defendants singled out ART for its violation of the air-conditioner prohibition, in that many other tenants had installed similar air-conditioning units but had not been asked to remove them. Defendants have denied this allegation and have submitted a copy of a photograph of the building which purportedly reveals *859 that the only three air-conditioners visible on the two sides of the building in the photograph belonged to ART.
With regard to damages, Bartman alleges that his repeated falls on the marble steps of the building’s front entryway caused him to lose “most of his ability to use his prosthesis,” such that he has become “almost entirely wheelchair dependent.” Plaintiffs also allege that defendants’ refusal to render the building handicapped-accessible resulted in ART’s loss of its executive director’s valuable time when he was unable to enter the building, required them to hire an extra employee to assist Bart-man in entering the building, and forced them to vacate the building in 2003. Additionally, Bartman alleges continuing damages insofar as he has ongoing business relationships that require him to visit tenants in the building.
ART’s Standing To Assert Claims of Disability Discrimination
Plaintiffs’ first and seventh claims allege that ART was injured as a result of defendants’ violations of the Administrative Code of the City of New York. Plaintiffs’ third and eighth claims allege that ART was injured as a result of defendants’ violations of the New York State Executive Law (Human Rights Law). Defendants assert that these claims brought on ART’s behalf must be dismissed because ART does not have standing to assert such claims under the Executive Law or the Administrative Code.
Executive Law § 296 (2) (a) provides:
“It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation . . . because of . . . disability . . . directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof.” (Emphasis supplied.)
Executive Law § 292 (1) defines a “person,” for purposes of the Human Rights Law, as “one or more individuals, partnerships, associations, corporations, legal representatives, trustees, trustees in bankruptcy, or receivers.” However, “the plain language of the New York State Human Rights Law clearly indicates that it only prohibits discrimination against individuals who are themselves disabled.”[2] (Abdel-Khalek v Ernst & Young LLP, 1999 WL 190790, *9, 1999 US Dist LEXIS 2369, *25-26 [SD NY, *860 Mar. 5, 1999]; see also Lugo v St. Nicholas Assoc., 2 Misc 3d 212, 218 [Sup Ct, NY County 2003]; Dunn v Fishbein, 123 AD2d 659, 660-661 [2d Dept 1986].) Because the statute “gives no indication that it was intended to provide a cause of action for disability association discrimination” (Abdel-Khalek, supra, 1999 WL 190790, *9, 1999 US Dist LEXIS 2369, *26-27), plaintiff ART’s claims under the Executive Law must be dismissed (id.; see also Lugo, supra, 2 Misc 3d at 218).
However, Administrative Code § 8-107 (20) explicitly grants standing to sue to those who have been discriminated against by virtue of their association with a disabled individual:
“Relationship or association. The provisions of this section set forth as unlawful discriminatory practices shall be construed to prohibit such discrimination against a person because of the actual or perceived race, creed, color, national origin, disability, age, sexual orientation or alienage or citizenship status of a person with whom such person has a known relationship or association.” (Emphasis supplied; see also Matter of Barton v New York City Commn. on Human Rights, 140 Misc 2d 554, 560-561 [Sup Ct, NY County 1988].)
Additionally, Administrative Code § 8-102 (1) defines a “person” as “one or more natural persons, proprietorships, partnerships, associations, group associations, organizations, governmental bodies or agencies, corporations, legal representatives, trustees, trustees in bankruptcy, or receivers.” Clearly, then, the Administrative Code authorizes claims for “disability association discrimination” (see Abdel-Khalek, 1999 WL 190790, *9, 1999 US Dist LEXIS 2369, *27-28), and also permits a variety of entities — and not solely individual plaintiffs — to bring discrimination suits.
Here, ART asserts that it was injured by virtue of its association with a disabled person, fe., Bartman, its executive director, whom defendants discriminated against. ART’s theory, as outlined in its affirmations on this motion, is that defendants directed their retaliatory behavior against ART, rather than Bartman individually, and ART was thereby injured. The es *861 sence of discriminatory retaliation is its capacity to quell the individual’s willingness to defend himself against discrimination. Plainly, this may be accomplished through direct retaliation against an individual, or retaliation against persons associated with that individual.
Moreover, CPLR 3026 cautions that “[p] leadings shall be liberally construed” and “[d]efects shall be ignored if a substantial right of a party is not prejudiced.” When the facts, as alleged by plaintiffs, are presumed to be true and accorded every favorable inference (Doria v Masucci, 230 AD2d 764, 765 [2d Dept 1996]), it is clear that ART has adequately asserted a classic “disability association discrimination” case comparable to that presented in Lugo.
In Lugo, the court upheld plaintiff’s complaint under the Americans With Disabilities Act (ADA) where a disabled person’s health aide was injured as a result of attempting to maneuver her employer’s wheelchair down the steps of a building that provided no wheelchair ramp. The court held that, because the plaintiff “had no choice but to escort her [employer] down the stairs . . . she was denied the accommodation which was also denied to her client.” (Lugo, supra, 2 Misc 3d at 217; contrast Puckett v Northwest Airlines, Inc., 131 F Supp 2d 379, 383 [ED NY 2001] [where plaintiff, the sister of a disabled person, could have taken a different airplane flight rather than waiting for one which permitted her sister onboard, there was no violation stated under the ADA].) Here, as in Lugo, plaintiff ART is alleging that, by virtue of its employment relationship with Bartman, it had no choice but to suffer the negative consequences of defendants’ allegedly discriminatory conduct (as previously delineated) against Bartman.[3]
Thus, because the Administrative Code permits a claim of disability association discrimination, and also permits a disability discrimination suit to be brought on behalf of a corporation, defendants’ motion to dismiss ART’s claims under the Administrative Code must be denied.
Bartman’s Claims Under the Executive Law
Defendants assert that plaintiffs’ claims under the Executive Law should be dismissed because “State Law . . . does not require public accommodations to make reasonable accommoda *862 tions to disabled persons.”[4] As noted above, ART’s claims under the Executive Law must be dismissed for lack of standing.
Bartman’s claims, however, must stand. Defendants misconstrue Bartman’s claims as falling exclusively within the rubric of Executive Law § 296 (3) (a) and § 296 (18) (2), provisions that explicitly require that “reasonable accommodations” be made for disabled workers in the context of employment or housing. Instead, Bartman’s claims fall within the broader reach of Executive Law § 296 (2) (a) which, as noted above, makes it unlawful for the owner of a “public accommodation” to “refuse, withhold from or deny” a disabled person access to that public accommodation. (See, e.g., Disabled in Action of Metro. N.Y. v Trump Intl. Hotel & Tower, 2003 WL 1751785, 2003 US Dist LEXIS 5145 [SD NY, Apr. 2, 2003] [defendants’ motion to dismiss complaint for injunctive relief and damages due to inadequate wheelchair access, brought under ADA, Executive Law § 296 (2) (a) and Administrative Code § 8-107, is denied].)
That the premises in question is a “public accommodation” within the meaning of the Human Rights Law is well-settled. (See Matter of Cahill v Rosa, 89 NY2d 14, 21 [1996] [the statutory definition of “public accommodation” is “broad and inclusive”]; Barton, supra, 140 Misc 2d at 558-559.) Equally important to this analysis is the fact that Bartman has alleged not only that defendants’ failure to alter the front entryway of the building constitutes disability discrimination, but also that defendants’ failure to render accessible the side entrance (which was already equipped with handrails) or to provide him with sufficient assistance when entering the building, has resulted in both physical injury and an inability to enter the building to go to work. As one court has stated, in the context of an ADA claim:
“Obviously, if a handicapped person cannot safely use a facility or accommodation, access to the facility or accommodation is seriously compromised. This reality is closely akin to the actual denial of access, because if a person cannot safely use a building, then access to the building is significantly restricted. And restricted access can amount to discrimination.” (Lugo, supra, 2 Misc 3d at 216 [emphasis supplied; internal quotation marks omitted], quoting Theatre Management Group, Inc. v Dalgliesh, 765 A2d 986, 991 [DC 2001].)
*863 Of course, defendants have denied these allegations, thereby raising questions of fact as to their violation of Executive Law § 296 (2) (a). However, this aspect of Bartman’s claim is not subject to a legal defense of “reasonable accommodation.” Therefore, Bartman has asserted cognizable discrimination claims under the Human Rights Law and defendants’ motion to dismiss on this ground must be denied.
Plaintiffs’ Claims Against Shenker
Defendants assert that plaintiffs’ claims against Shenker, individually, must be dismissed because Shenker was not a direct employee of Onbar, the building’s owner. However, both the Administrative Code and the Human Rights Law extend liability for discriminatory acts to agents of the owner. (See Administrative Code § 8-107 [5] [b], and Executive Law § 296 [2].) As defendants have conceded that Shenker acted as the managing agent on behalf of Onbar, defendants’ argument in this regard is unavailing.
Defendants’ Assertion of the Statute of Limitations
The parties agree that the applicable statute of limitations under both the Administrative Code and the Executive Law is three years. Defendants assert that all claims that predate January 2, 2001, three years before the date that this complaint was filed, should be dismissed as untimely. Plaintiffs, however, contend that those acts which fall outside the three-year statute of limitations were part of a continuing violation, in that defendants continued to discriminate against plaintiffs throughout their tenancy in the building.
With regard to plaintiffs’ hostile work environment claims, “[t]he continuing violation doctrine allows a plaintiff to challenge all conduct that is part of the same course of discriminatory treatment, even if some of the conduct occurred [outside the statute of limitations].” (Fol v City of New York, 2003 WL 21556938, *4, 2003 US Dist LEXIS 11671, *13 [SD NY, July 9, 2003].) Therefore, plaintiffs will be permitted to introduce, as proof of a continuing violation, evidence of acts which allegedly occurred outside the three-year statute of limitations, so long as plaintiffs have proffered admissible evidence of discriminatory acts which occurred within the three-year statute of limitations. Evidence of acts which occurred outside the three-year statute of limitations will be deemed inadmissible as to plaintiffs’ other claims, including retaliation claims. (See National R.R. Passenger Corp. v Morgan, 536 US 101, 116-117 [2002]; Gilani v National Assn. of Sec. Dealers, Inc., 1997 WL 473383, *10, 1997 US Dist LEXIS 12287, *30 [SD NY, Aug. 19, 1997].)
*864 Accordingly, it is ordered that defendants’ motion to dismiss is granted to the extent that the third and eighth claims of plaintiffs’ complaint are hereby dismissed, and evidence of alleged discriminatory acts which predate January 2, 1999 will be excluded at trial except as to the fifth and sixth claims (hostile environment), and it is otherwise denied.

. Bartman’s left leg is amputated below the knee. He wore a prosthetic leg and, at times, used a wheelchair.

. In a narrow set of cases, an organization which is “a bona fide recognized organization representing that class with a specific interest in the *860 litigation in question” may bring a discrimination suit under the Human Rights Law even in the absence of a representative injured plaintiff (National Org. for Women v State Div. of Human Rights, 34 NY2d 416, 420 [1974]; cf. Aleo Gravure, Inc. v Knapp Found., 64 NY2d 458, 466 [1985]), but those cases are not based upon the allegation — presented here — that the organization itself has suffered discrimination by association with the protected class.

. In dismissing plaintiffs claims under the Administrative Code, the court in Lugo did not address the impact of Administrative Code § 8-107 (20) on plaintiffs standing, merely noting that plaintiff had conceded she was not a member of a protected class. (Lugo, supra, 2 Misc 3d at 218.)

. Defendants’ mem of law in support of motion to dismiss complaint at 7.